Janet **SASSAMAN**, Plaintiff,

v.

**HEART CITY TOYOTA**, Defendant.

No. S93–CV–183RM.

United States District Court,
N.D. Indiana,
South Bend Division.

Dec. 13, 1994.

906

John C. Hamilton, Doran Blackmond Ready Hamilton and Williams, South Bend, IN, for plaintiff.

Bradley L. Varner, Christopher A. Nichols, May Oberfell and Lorber, South Bend, IN, for defendant.·

*MEMORANDUM AND ORDER*

MILLER, District Judge.

This cause is before the court on the plaintiff Janet Sassaman's petition for attorney fees (filed September 8, 1994 (# 61)), and on

the defendant Heart City Toyota's motion for judgment as a matter of law or in alternative, for new trial or remittitur (filed September 16, 1994 (# 66)), Heart City Toyota's petition for attorney fees (filed September 16, 1994 (# 66)), and motion for oral argument and hearing on petition for attorney fees (filed September 23, 1994 (# 69)). For the reasons which follow, the court denies Heart City's motion for judgment as a matter of law or in the alternative for new trial or remittitur, denies Heart City's petition for attorney fees, and grants Ms. Sassaman's petition for attorney fees.

Logic dictates that the court first consider Heart City's motion for judgment as a matter of law, or in the alternative, for a new trial or remittitur.

### I.

Janet Sassaman sued her former employer, Heart City, under the Civil Rights Act of 1991, 42 U.S.C. § 2000e–5(f)(1) and 42 U.S.C. § 1981a, alleging sexual harassment, sexual discrimination, and retaliation. On September 1, upon completion of a four-day jury trial, the jury returned a verdict for Ms. Sassaman on her sexual harassment claim. The jury awarded Ms. Sassaman $2,000 in compensatory damages and $20,000.00 in punitive damages. The following day, the clerk entered judgment on the verdict.

### A.

Heart City has moved for judgment as a matter of law, or in the alternative, for a new trial or remittitur, pursuant to Rules 50, 54, and 59 of the Federal Rules of Civil Procedure. Heart City contends that it is entitled to judgment because Ms. Sassaman failed to prove all elements of her sexual harassment claim and because the evidence, when viewed in the light most favorable to Ms. Sassaman,

was insufficient to support the jury's verdict. Heart City contends that Ms. Sassaman failed to prove that Heart City management knew of the alleged sexual misconduct, but failed to take corrective action, or that sex was a factor in her treatment at Heart City.

Heart City contends that Ms. Sassaman's testimony with respect to her sexual harassment and discrimination claims was inconsistent and thus, entitled to little or no weight. Heart City also contends that Ms. Sassaman's failure to adhere to pretrial deadlines entitles it to a new trial. Finally, Heart City contends that the punitive damages award is excessive and bears no rational relation to the evidence.

Ms. Sassaman contends that Heart City has not and cannot establish the absence of evidence or reasonable inferences based on the evidence in support of her sexual harassment claim. She contends that Heart City's argument amounts to nothing more than the proposition that the jury should have afforded greater weight to Heart City's evidence than to Ms. Sassaman's evidence. Finally, Ms. Sassaman contends that Heart City has not established that the jury's award of punitive damages was grossly excessive.

A motion for judgment as a matter of law may be granted only if the evidence overwhelmingly favors the moving party.[1] *Scaggs v. Consolidated Rail Corp.*, 6 F.3d 1290, 1293 (7th Cir.1993) (citing *Ross v. Black & Decker, Inc.*, 977 F.2d 1178, 1182 (7th Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 1274, 122 L.Ed.2d 669 (1993)). The court must view the evidence in the light most favorable to the prevailing party and draw all reasonable inferences in the prevailing party's favor. *Scaggs v. Consolidated Rail Corp.*, 6 F.3d at 1293; *Tire Sales Corp. v. Cities Serv. Oil Corp.*, 637 F.2d 467, 472 (7th Cir.1980), *cert. denied,* 451 U.S. 920, 101

1. Rule 50 of the Federal Rules of Civil Procedure, which governs motions for judgment as a matter of law, provides in pertinent part:

   Whenever a motion for a judgment as a matter of law made at the close of all the evidence is denied or for any reason is not granted, the court is deemed to have submitted the action to the jury subject to a later determination of the legal questions raised by the motion. Such a motion may be renewed by service and filing not later than 10 days after entry of judgment. A motion for a new trial under Rule 59 may be joined with a renewal of the motion for judgment as a matter of law, or a new trial may be requested in the alternative. If a verdict was returned, the court may, in disposing of the renewed motion, allow the judgment to stand or may reopen the judgment and either order a new trial or direct the entry of judgment as a matter of law.

S.Ct. 1999, 68 L.Ed.2d 312 (1981); *see also Thomas v. Stalter*, 20 F.3d 298, 301 (7th Cir.1994).

■ The court may grant a motion for judgment as a matter of law only where there is no substantial evidence or reasonable inference to support an essential element of the non-moving party's claim, *Crowder v. Lash*, 687 F.2d 996, 1002 (7th Cir.1982); a mere scintilla of evidence is not sufficient to support the jury's verdict. *Tice v. Lampert Yards, Inc.*, 761 F.2d 1210, 1213 (7th Cir. 1985). The court should grant judgment as a matter of law when "without weighing the credibility of the witnesses there can be but one reasonable conclusion as to the verdict...." *Freeman v. Franzen*, 695 F.2d 485, 488 (7th Cir.1982) (citation omitted), *cert. denied*, 463 U.S. 1214, 103 S.Ct. 3553, 77 L.Ed.2d 1400 (1983); *Johnson v. Baltimore & O.R. Co.*, 65 F.R.D. 661, 663 (N.D.Ind. 1974), *aff'd*, 528 F.2d 1313 (1976); *see also Lippo v. Mobil Oil Corp.*, 776 F.2d 706, 716 (7th Cir.1985) (witness credibility is for the jury's determination). The jury's verdict cannot be set aside "so long as it has a reasonable basis in the record." *Lippo v. Mobil Oil Corp.*, 776 F.2d at 716 (citations omitted).

■ For Ms. Sassaman to prevail on her sexual harassment claim the evidence must support a finding that: (1) Ms. Sassaman suffered sexual misconduct having the purpose or effect of unreasonably interfering with her performance or creating an intimidating, hostile or offensive environment; (2) the sexual misconduct was severe and pervasive; (3) Heart City knew or had reason to know of the conduct while it was occurring; and (4) Heart City failed to take reasonable corrective action. *See Harris v. Forklift Systems, Inc.*, — U.S. —, — – —, 114 S.Ct. 367, 370–71, 126 L.Ed.2d 295 (1993); *Saxton v. AT & T Co.*, 10 F.3d 526, 533–36 (7th Cir.1993); *Juarez v. Ameritech Mobile Communications, Inc.*, 957 F.2d 317, 320 (7th Cir.1992).

■ The evidence, viewed in the light most favorable to Ms. Sassaman, with all reasonable inferences drawn in her favor, supports the jury's verdict; the evidence does not overwhelmingly favor Heart City. Ms. Sassaman testified at trial about the conduct of Kevin Cunningham (Heart City's new car sales manager), Roger Ellis (assistant sales manager at Heart City), Claire McDonald (used car sales manager at Heart City), and Gerald Suszko (general manager of Heart City).[2]

According to Ms. Sassaman, Roger Ellis had a way of humiliating her every day: he would stand in the show room and flick his tongue at her; Mr. Ellis told her about his sexual exploits with his wife and asked her to join them; he bragged to her about sliding under a female sales-person in the showroom and seeing a "juicy pussy"; when she would pick up the clean-up man Louis, Mr. Ellis would ask her if they had fun and if she liked black dicks better than white ones.

Mr. McDonald had a way of getting too close to her—putting his arm around her and rubbing against her elbow. Once, Mr. McDonald brushed across her breasts. Mr. McDonald asked her many questions about being single and about her male companionship. Mr. Cunningham would laugh when Mr. Ellis flicked his tongue at Ms. Sassaman. Charles Barrett, a former salesman at Heart City, testified that he worked with Ms. Sassaman and observed her with used cars management. Mr. Barrett testified that Mr. McDonald treated her with disrespect and did not treat her like he treated the males. Mr. Barrett testified that on numerous occasions the management failed to assist Ms. Sassaman.

Ms. Sassaman testified that Mr. Cunningham treated her differently than he treated the salesmen. She testified that: she had to clean the popcorn machine when the male salespersons did not[3]; Mr. Cunningham would not allow her to let customers go alone

**2.** These individuals denied Ms. Sassaman's allegations.

**3.** Before Mr. Cunningham arrived at Heart City, everyone took turns cleaning a popcorn machine on a daily basis, but after Mr. Cunningham arrived she found herself to be the only one cleaning the machine. Mr. Cunningham told Ms. Sassaman that cleaning the popcorn machine was a woman's job.

on demonstration rides when male salespersons were so allowed; Mr. Cunningham would not let her smoke although smoking was allowed on the premises and men were allowed to smoke [4]; everything Mr. Cunningham gave her he either threw at her or mixed up; Mr. Cunningham insisted that she tell him when she was taking her lunch break, but that other salesmen would come and go as they pleased; Mr. Cunningham would not permit her to use the computer locator system,[5] but permitted other salespersons to use it; and Mr. Cunningham made it difficult for her to work deals with customers.[6]

According to Ms. Sassaman's testimony, Mr. Cunningham told Ms. Sassaman to tell one customer to "fuck [her]" because he did not want to deal with him. When Ms. Sassaman switched days off with another salesperson to have her birthday off and to spend the weekend in Chicago, Mr. Cunningham ordered her to take a test at Lochmandy Motors on the day she was to have off. He would not show her how to run the computerized test; rather, he told her, "You're a woman, you can figure it out". She later learned that she could have taken the test at any time and did not have to take the entire test at once. Mr. Cunningham sent Ms. Sassaman to a seminar in Indianapolis on less than a day's notice and insisted that she ride with a new salesman, Craig. After the trip, Mr. Ellis and Cunningham asked Craig if he "got any pussy" while in Indianapolis.

On the day that Ms. Sassaman was terminated, Heart City was participating in a dealer show. Mr. Cunningham told Ms. Sassaman to stay at the store, even though she was the first on the "up" list. Although Mr. Cunningham said he would soon send a salesman to relieve her, he did not do so until noon. Mr. Cunningham brought sandwiches

for all the male sales representatives, but not for Ms. Sassaman. When Mr. Cunningham told Ms. Sassaman that she was fired, he offered as an explanation that women are not cut out to be car sales people and that they should be home with their kids.

Ms. Sassaman testified that Gerald Suszko, Heart City's general manager, would inquire of her as to her love life; he persisted in questioning her although she told him it was not his concern. Ms. Sassaman testified that Mr. Suszko was aware of the sexual treatment from Mr. Ellis and Mr. Cunningham since Mr. Suszko was present on many occasions.

Dennis Lochmandy, Heart City's president, testified that he would be at Heart City for several hours each day during the relevant time period.

Heart City had a policy against sexual harassment. Ms. Sassaman testified that she did not receive a copy of Heart City's harassment policy until two weeks before she was terminated. She did not complain of the sexual harassment to any Heart City management.

Ms. Sassaman testified that Mr. Ellis's conversations about his partying and sexual exploits were humiliating and degrading and that she did not invite the conversation. She testified that she was humiliated and embarrassed by Mr. McDonald's conduct and Mr. Cunningham's treatment of her as well. Dr. Elliott testified that Ms. Sassaman perceived that she was being mistreated and unappreciated at Heart City. He also testified that, assuming Ms. Sassaman's perceptions to be accurate, a person with Ms. Sassaman's psychological make-up was likely to experience daily pain in a working environment characterized by sexual hostility.

4. Ms. Sassaman testified that Mr. Cunningham told her that women do not look good smoking.

5. Mr. Cunningham told her that it was Mr. Ellis's job, but other salesman used the computer themselves. On one occasion Mr. Cunningham told her that she had no right to locate and contact a dealer to sell a vehicle which was not in stock; he told her never to use the computer again.

6. Ms. Sassaman testified that Mr. Cunningham would not let her go to lunch if she was at the

bottom of the "ups", but when she was "up next" he would send her to pick up Louis, the clean-up man. On every transaction, Mr. Cunningham wanted deposits or down payments up front before he would give her any figures. Other salesman were able to take used cars for appraisal, had access to the invoices and were not required to take money up front. They were allowed to "work" the deals, but she was not.

Given this evidence, evidence which is greater than a mere scintilla, *see Tice v. Lampert Yards, Inc.,* 761 F.2d at 1213, the court cannot find that there is no substantial evidence or reasonable inference to support the essential elements of Ms. Sassaman's sexual harassment claim. *Crowder v. Lash,* 687 F.2d at 1002. Without weighing the witnesses' credibility, the court cannot conclude that there is but one reasonable conclusion as to the verdict, *see Freeman v. Franzen,* 695 F.2d at 488; *Lippo v. Mobil Oil Corp.,* 776 F.2d at 716, or that the jury's verdict has no reasonable basis in the record. *See Lippo v. Mobil Oil Corp.,* 776 F.2d at 716. Ms. Sassaman's testimony, if believed, supports the jury's finding that Ms. Sassaman established all the elements of her sexual harassment claim.[7] The jury reasonably could find from the evidence that Ms. Sassaman suffered severe and pervasive sexual misconduct having the purpose or effect of unreasonably interfering with her performance or creating an intimidating, hostile or offensive environment. She was subjected on a daily basis to sexual humiliation and degradation by the actions and comments of Mr. Ellis and the different standards set by and treatment of Mr. Cunningham. Male employees got too close to her, touched her, brushed her breasts, and persisted in questioning her about her love life. As Dr. Elliott testified, such encounters would likely cause Ms. Sassaman daily psychological pain.

■ The jury could reasonably find from the evidence that Heart City knew or had reason to know of the sexual misconduct while it was occurring, but failed to take reasonable corrective action. Even though Ms. Sassaman did not complain of the sexual harassment to any Heart City management, the jury reasonably could find that Heart City management knew, or had reason to know, of the sexual harassment. The jury reasonably could find, based on Ms. Sassaman's testimony, that Mr. Suszko was aware of or had reason to be aware of the sexual treatment from Mr. Ellis and Mr. Cunningham since Mr. Suszko was present on many of the occasions when they harassed Ms. Sassaman. The jury reasonably could find that Mr. Lochmandy, who testified that he would be at Heart City for several hours each day, knew or had reason to know of the sexual harassment.

Thus, substantial evidence and reasonable inferences support each essential element of Ms. Sassaman's sexual harassment claim. Because the evidence supports the jury's verdict, *see Reboy A.O. v. Cozzi Iron & Metal, Inc.,* 9 F.3d 1303 (7th Cir.1993), and because the court may not grant a motion for judgment as a matter of law unless the evidence overwhelmingly favors the moving party, *see Scaggs v. Consolidated Rail Corp.,* 6 F.3d at 1293, Heart City's motion for judgment as a matter of law must be denied.

### B.

■ A new trial may be granted only if (1) the clear weight of the evidence is against the jury verdict, (2) the damages are excessive, or (3) the trial was not fair to the moving party for some other reason.[8] *McNabola v. Chicago Transit Authority,* 10 F.3d 501, 516 (7th Cir.1993); *Scaggs v. Consol. Rail Corp.,* 6 F.3d 1290, 1293 (7th Cir. 1993); *Allison v. Ticor Title Ins. Co.,* 979 F.2d 1187, 1196 (7th Cir.1992). In analyzing a motion for a new trial, the court must view the evidence in the light most favorable to the prevailing party, and cannot set aside the jury verdict if a reasonable basis exists in the record to support the jury's verdict. *Scaggs,* 6 F.3d at 1293; *Allison v. Ticor Title Ins. Co.,* 979 F.2d at 1196; *M.T. Bonk Co. v. Milton Bradley Co.,* 945 F.2d 1404, 1407 (7th

---

7. There was no evidence that the male salespersons were subjected to the same or similar sexual comments, innuendo, touching, sexual invitations, or discussions of sexual exploits. Therefore, the instant cause is distinguishable from *Vore v. Indiana Bell Telephone Co.,* 32 F.3d 1161 (7th Cir.1994), where none of the plaintiffs alleged that their employer treated them differently on account of their race.

8. Rule 59 of the Federal Rules of Civil Procedure, which governs motions for a new trial, provides in pertinent part:

A new trial may be granted to all or any of the parties and on all or part of the issues (1) in an action in which there has been a trial by jury, for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States....

Cir.1991); *see also Thomas v. Stalter*, 20 F.3d 298, 301 (7th Cir.1994).

■ As discussed above, the jury verdict is supported by a reasonable basis in the record. Having found a reasonable basis in the record to support the jury verdict, the court cannot conclude that the clear weight of the evidence is against the jury verdict. Accordingly, the defendant's motion for a new trial, on the ground that the jury's verdict is against the clear weight of the evidence, must be denied.

### C.

■ Even though Ms. Sassaman did not present evidence regarding the worth of Heart City, the court cannot conclude that the $20,000 punitive damages award is excessive. The district court may alter a jury award if it is "monstrously excessive, born of passion and prejudice, or not rationally connected to the evidence." *Dresser Industries, Inc., Waukesha Engine Div. v. Gradall Co.*, 965 F.2d 1442, 1446 (7th Cir.1992) (quoting *Pincus v. Pabst Brewing Co.*, 893 F.2d 1544, 1554 (7th Cir.1990)); *see also Joan W. v. City of Chicago*, 771 F.2d 1020, 1023 (7th Cir.1985) (jury's verdict should be set aside only if it is monstrously excessive, or flagrantly outrageous and extravagant); *Abernathy v. Superior Hardwoods, Inc.*, 704 F.2d 963, 971 (7th Cir.1983) (jury's verdict which is grossly excessive may be set aside). In determining whether an award is "monstrously excessive", the court can consider other jury awards in similar cases. *Pincus v. Pabst Brewing Co.*, 893 F.2d at 1554; *Cygnar v. City of Chicago*, 865 F.2d 827 (7th Cir.1989). In *Hunter v. Allis–Chalmers Corp., Engine Div.*, 797 F.2d 1417, 1425 (7th Cir.1986), the Seventh Circuit upheld a $25,000 punitive damages award to a victim of persistent acts of racial discrimination. In *Reeder–Baker v. Lincoln Nat. Corp.*, 649 F.Supp. 647, 663 (N.D.Ind.1986), *aff'd*, 834 F.2d 1373 (7th Cir. 1987), the court awarded $25,000 in punitive damages to a plaintiff who suffered racial discrimination where the defendant callously disregarded the plaintiff's rights.

■ The court is unpersuaded by Heart City's argument that Ms. Sassaman failed to prove her damages. The jury reasonably could find that Ms. Sassaman suffered emotional damages as a result of the sexual harassment. The court instructed the jury on compensatory damages, in part:

You may award compensatory damages for any emotional pain, suffering, inconvenience, and metal anguish, as well as any future monetary or economic losses, if you find these were caused by Heart City's allegedly illegal act. No evidence of monetary value of such pain, suffering, or mental anguish has been, or need be, introduced into evidence. There is not exact standard for fixing the compensation to be awarded for these elements of damage. Any award you make should be fair in light of the evidence presented at trial.

\* \* \*

In determining the amount of any damages that you decide to award, you should be guided by dispassionate common sense. You must use sound discretion in fixing an award of damages, drawing reasonable inferences from the fact in evidence. You may not award damages based on sympathy, speculation, or guess work.

Jury Instruction No. 15. The jury is presumed to have followed the court's instructions. *See United States v. L'Allier*, 838 F.2d 234, 242 (7th Cir.1988) ("Our theory of trial relies upon the ability of a jury to follow instructions."), *denial of habeas corpus aff'd*, 37 F.3d 1501 (1994). Ms. Sassaman testified that the conduct and comments of Mr. Ellis, Mr. Cunningham, Mr. McDonald, and Mr. Suszko were humiliating, degrading, and embarrassing. Heart City's expert, Dr. Elliott, testified that Ms. Sassaman perceived that she was being mistreated and unappreciated at Heart City. Dr. Elliott further testified that, assuming Ms. Sassaman's perceptions to be accurate, a person with Ms. Sassaman's psychological make-up was likely to experience daily pain in a working environment characterized by sexual hostility. Ms. Sassaman established that she suffered damages from the sexual harassment.

■ As to punitive damages, the court instructed the jury in part:

If you determine that Heart City's conduct justifies an award of punitive dam-

ages, you may award an amount of punitive damages which all jurors agree is proper. In fixing the amount, you should consider the following questions: How offensive was the conduct? What amount is needed, considering the defendant's financial condition, to prevent future repetition? Does the amount of punitive damages have a reasonable relationship to the actual damages awarded?

If you do award punitive damages, you should fix the amount using calm discretion and sound reason. You must not be influenced by sympathy for or dislike of any party in the case.

Jury Instruction No. 17. The jury is presumed to have followed the court's instructions. *See L'Allier,* 838 F.2d at 242. The court may determine that the jury failed to follow the instruction only if the jury's damage award is so high that it could have only been the product of passion or sympathy. *See Haluschak v. Dodge City of Wauwatosa, Inc.,* 909 F.2d 254, 256 (7th Cir.1990).

Heart City's contention that the punitive damages award is against the weight of the evidence, bears no rational relationship to the evidence, and is excessive is not persuasive. A punitive damages award of $20,000 cannot be said to be so high that it could have been the product only of passion or sympathy; rather, such an award is rationally connected to the evidence. As the Seventh Circuit has stated, "[the value of victory] [of a civil rights plaintiff] cannot be gauged by the modest size of the damages awarded." *Ustrak v. Fairman,* 851 F.2d 983, 989 (7th Cir.1988).

### D.

■ Finally, Heart City contends that it is entitled to a new trial due to Ms. Sassaman's failure to adhere to the court's pretrial deadlines, which Heart City contends caused it substantial expense and disruption of its trial preparation. Heart City contends that Ms. Sassaman was able to call Dr. Elliott on a topic undisclosed to Heart City, that defense counsel spent substantial time in pre-

paring to refute the post-traumatic stress disorder claim which was not raised at trial, and that Heart City would not have retained Dr. Elliott had Ms. Sassaman not raised the post-traumatic stress disorder claim. Heart City also contends that it was unfairly prejudiced to the extent that the jury "may" have relied on plaintiff's indirect evidence of discrimination.

Ms. Sassaman has not addressed these contentions.

On August 15, 1994, Heart City moved the court for an enlargement of time within which to comply with various pretrial deadlines set forth in the court's October 28, 1993 Order on Conduct of Trial, due to the plaintiff's inability to meet those various deadlines.[9] On August 22, the court granted the motion, affording Heart City to and including August 29 within which to comply.

Heart City provides no authority to support the proposition that Ms. Sassaman was somehow bound to present, and could not abandon, her claim for post-traumatic stress disorder. Heart City provides no authority to support the proposition that the fact that Heart City would not have retained Dr. Elliott but for Ms. Sassaman's post-traumatic stress disorder claim entitles Heart City to a new trial. The latter proposition is essentially connected with and dependent on the former proposition.

The court does not find Heart City's contention that Ms. Sassaman was able to call the defense's expert, Dr. Elliott, on a topic undisclosed to Heart City, availing. Heart City does not identify the "undisclosed topic" upon which Ms. Sassaman called Dr. Elliott; indeed, Heart City listed Dr. Elliott as an expected witness on its expert witness list. Heart City stated that Dr. Elliott would be a rebuttal witness as to Ms. Sassaman's alleged psychological injury, and Ms. Sassaman listed Dr. Elliott as an expected expert witness in her "Notice of Experts", filed August 15 and served on Heart City on August 12. Ms. Sassaman stated that Dr. Elliott would testify regarding the psychological im-

---

9. Ms. Sassaman had failed to provide Heart City with her trial brief, proposed jury instructions, proposed *voir dire,* and objections to the pretrial materials filed by Heart City. On August 15 Ms.

Sassaman provided Heart City with her identification of certain rebuttal exhibits, designation of deposition excerpts to be used at trial, and expert witness list.

pact on her as an employee of Heart City. Although Heart City may have been somewhat prejudiced to the extent that its trial preparation was disrupted by Ms. Sassaman's failure to meet pretrial deadlines, the court cannot find that any such prejudice is sufficient enough to entitle Heart City to a new trial.

Finally, the court must reject Heart City's contention that it was unfairly prejudiced to the extent that the jury "may" have relied on plaintiff's indirect evidence of discrimination. Heart City's contention is based on mere speculation, as noted by the use of the word "may." Further, as explained previously, the evidence supported the jury's verdict on her sexual harassment claim. As recently expressed by the Seventh Circuit, a plaintiff can elect to proceed under direct proof rather than indirect proof. *Equal Employment Opportunity Comm'n v. G–K–G Inc.*, 39 F.3d 740, 747 (7th Cir.1994).

Accordingly, Heart City's alternative motion for new trial or remittitur must be denied.

## II.

Heart City contends that it is entitled to an award of attorney fees as the prevailing party on Ms. Sassaman's sexual discrimination and retaliation claims. Counsel for Heart City states that it spent "well in excess of 50%" and "probably closer to 80–85%" of their time with respect to those claims.

As to Ms. Sassaman's petition for attorney fees, Heart City contends that any award of attorney fees should be limited to fees incurred for work relating to the claim on which Ms. Sassaman prevailed. Heart City contends that sexual harassment and sexual discrimination are separate claims for relief, and that Ms. Sassaman has not established that work done in support of the sexual harassment claim was done in support of the sexual discrimination claim as well. Heart City also challenges various fee petition entries: conversations with Ms. Sassaman's family, pre-litigation activity, time expended in preparing the petition for attorneys fees, unused witnesses and theories, witness and mileage fees, and the total hours billed for closing argument and verdict. Heart City also takes issue with the hourly rates of Mr. Hamilton and Mr. Don G. Blackmond II.

Ms. Sassaman contends that she is entitled to an award of attorney fees and costs as the prevailing party on her sexual harassment claim. Ms. Sassaman contends that all factual and legal issues in the cause were sufficiently linked such that success as to one was success as to all. Ms. Sassaman's attorney, John C. Hamilton, states that his hourly rate in this case was $150.00, but that he raised his hourly rate for all new employment discrimination cases to $175.00, effective August 1, 1994. Attorney Timothy W. Woods states that he is familiar with the prevailing hourly rates for trial attorneys in employment discrimination law in the area and that $175.00 is a reasonable hourly rate. Mr. Woods further states that a $175.00 hourly rate for Mr. Hamilton is reasonable. Ms. Sassaman seeks to recover fees for services provided by Mr. Blackmond, a 1994 *cum laude* graduate of Valparaiso Law School, but unlicensed to practice as an attorney, at an hourly rate of $80.00, and for Thomas H. Kingston, a law clerk with one year's law school experience, at an hourly rate of $40.00.

Ms. Sassaman contends that the initial amount of fees generated is $22,339.00 or $24,517.50 (if Mr. Hamilton's fees are calculated at the rate of $175.00 per hour), and that the initial amount of costs and expenses incurred are $2,956.46. Ms. Sassaman filed a supplemental petition for attorneys fees and costs incurred subsequent to the filing of her original fee petition, seeking an additional $5,401.00 in attorneys fees and $24.60 in costs. She also filed a second supplemental affidavit in support of her petition for award of attorneys fees and costs, seeking $100.00 for the video taping of the cut brake line. Ms. Sassaman contends that she has tried to minimize additional fees incurred; Mr. Blackmond rather than Mr. Hamilton provided most of the services with respect to the supplemental petition. Plaintiff's counsel has verified all costs and attorneys fees incurred.

In the weeks before trial, Ms. Sassaman offered to settle all claims with Heart City for the sum of $22,000, including attorneys fees and expenses. Hamilton Aff., ¶ 7. Ms.

Sassaman contends that the jury's verdict in the total amount of $22,000 establishes her complete success.

■ 42 U.S.C. § 2000e–5(k) provides in pertinent part, "In any action or proceeding under this title [Title VII], the court, in its discretion, may allow the prevailing party ... a reasonable attorney's fee as part of the costs." The Civil Rights Attorney's Fees Award Act of 1976, 42 U.S.C. § 1988, authorizes a district court to award a reasonable attorney fee to the prevailing party in civil rights litigation. 42 U.S.C. § 1988; *see also Munson v. Milwaukee Bd. of School Directors,* 969 F.2d 266, 269 (7th Cir.1992). In determining whether to award reasonable attorney fees, district courts should apply separate standards depending upon whether the plaintiff or the defendant is the prevailing party. *Christiansburg Garment Co. v. EEOC,* 434 U.S. 412, 98 S.Ct. 694, 54 L.Ed.2d 648 (1978); *Unity Ventures v. County of Lake,* 894 F.2d 250, 253 (7th Cir.1990). A plaintiff who succeeds on "any significant issue in litigation which achieves some of the benefit sought in bringing suit" may be deemed a prevailing party, *see Unity Ventures v. Lake County,* 894 F.2d at 253 (quoting *Hensley v. Eckerhart,* 461 U.S. 424, 433, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983)), but stricter standards apply in the case of a prevailing defendant. The separate standards are necessary to ensure that plaintiffs with valid claims bring civil rights suits, while plaintiffs with frivolous claims are deterred. *Coates v. Bechtel,* 811 F.2d 1045, 1049–50 (7th Cir.1987).

### A.

■ The *Christiansburg* standards for determining whether a prevailing defendant is entitled to an award of costs and attorney fees apply under 42 U.S.C. § 1988. *Hughes v. Rowe,* 449 U.S. 5, 101 S.Ct. 173, 66 L.Ed.2d 163 (1980); *LaSalle Nat'l Bank of Chicago v. County of DuPage,* 10 F.3d 1333, 1340 (7th Cir.1993); *Coates v. Bechtel,* 811 F.2d 1045, 1049 n. 3 (7th Cir.1987); *Munson v. Friske,* 754 F.2d 683, 696 n. 9 (7th Cir. 1985). The district court may, in its discretion, award attorney fees to the prevailing defendant "upon a finding that the plaintiff's

action was frivolous, unreasonable, or without foundation," *Christiansburg Garment Co. v. EEOC,* 434 U.S. 412, 421, 98 S.Ct. 694, 700, 54 L.Ed.2d 648 (1978); *see also Coates v. Bechtel,* 811 F.2d at 1050; *Tarkowski v. County of Lake,* 775 F.2d 173, 176 (7th Cir. 1985); *Munson v. Friske,* 754 F.2d 683 (7th Cir.1985), where "the plaintiff continued to litigate after it clearly became so," *Coates v. Bechtel,* 811 F.2d at 1049 (quoting *Christiansburg Garment Co.,* 434 U.S. 412, 98 S.Ct. 694, 54 L.Ed.2d 648 (1978)); *Badillo v. Central Steel & Wire Co.,* 717 F.2d 1160, 1163–64 (7th Cir.1983), or where the plaintiff brought the action in subjective bad faith. *Unity Ventures v. Lake County,* 894 F.2d 250, 253 (7th Cir.1990). That the jury finds in favor of the defendant on a claim does not render that claim meritless or without foundation so as to justify an award of attorney fees and costs to a defendant. *LaSalle Nat'l Bank of Chicago,* 10 F.3d at 1340 (quoting *Hughes v. Rowe,* 449 U.S. 5, 14, 101 S.Ct. 173, 178, 66 L.Ed.2d 163 (1980)).

■ The court must determine whether a plaintiff's claim was " 'frivolous, unreasonable, or without foundation' as of the time of the filing of the suit, not with 'hindsight logic' after judgment has been entered against him." *Coates v. Bechtel,* 811 F.2d at 1050 (quoting *Christiansburg Garment Co. v. EEOC,* 434 U.S. at 422, 98 S.Ct. at 700). The plaintiff's version of the facts that form the basis of the suit is to be considered when determining whether an award of attorney fees is appropriate. *Coates v. Bechtel,* 811 F.2d at 1052 n. 5 (citing *Christiansburg Garment Co.,* 434 U.S. at 422, 98 S.Ct. at 700; *Hermes v. Hein,* 742 F.2d 350, 357–58 (7th Cir.1984)). An action is more likely frivolous when brought solely to harass or oppress the defendant, *see Munson v. Friske,* 754 F.2d at 697 (fee award upheld where plaintiff brought the action to further a personal vendetta); *Reichenberger v. Pritchard,* 660 F.2d 280, 289 (7th Cir.1981), but a fee award is not contingent upon a finding of bad faith on behalf of the plaintiff. *Coates v. Bechtel,* 811 F.2d at 1049 (citing *Tarkowski v. County of Lake,* 775 F.2d at 176).

■ Given the strict standards applicable to the claims on which the defendant pre-

vailed, the court cannot conclude that Heart City is entitled to an award of attorney fees and costs. First, Ms. Sassaman did not press her claims in the face of a previous adverse ruling. Second, there is no indication that Ms. Sassaman commenced this action in subjective bad faith, merely to harass or oppress Heart City; recognizing that subjective bad faith is not a prerequisite to an award of fees, in the absence of bad faith, the court should exercise great caution to ensure that plaintiffs with valid claims bring civil rights actions. Third, there is no indication that Ms. Sassaman was aware with any degree of certainty of a factual or a legal infirmity with respect to her retaliation or sexual discrimination claims.

Viewing the facts relevant to the retaliation and sexual discrimination claims as set forth in the plaintiff's complaint, an award of attorney fees would not be appropriate. Such factual allegations, if believed, could support claims for sexual discrimination and retaliation. *See Rush v. United States,* 559 F.2d 455, 458 (7th Cir.1977). The court denies Heart City's petition for attorney fees.

### B.

■■■■ Ms. Sassaman is entitled to an award of attorney fees as the prevailing party in this cause, but the district court must determine what fee is "reasonable." *Hensley v. Eckerhart,* 461 U.S. 424, 433, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1982). The Supreme Court's holding in *Hensley v. Eckerhart* instructs the courts as to determining an attorneys fees award when the prevailing party did not prevail on all of its claims:

the extent of the plaintiff's success is a crucial factor in determining the proper amount of an award of attorneys fees under 42 U.S.C. § 1988. Where the plaintiff has failed to prevail on a claim that is distinct in all respects from his successful claims, the hours spent on the unsuccessful claim should be excluded in considering the amount of a reasonable fee. Where a lawsuit consists of related claims, a plaintiff who has won substantial relief should not have his attorneys fees reduced simply because the district court did not adopt each contention raised. But where the

plaintiff achieved only limited success, the district court should award only that amount of fees that is reasonable in relation to the results obtained.

*Hensley v. Eckerhart,* 461 U.S. at 440, 103 S.Ct. at 1943; *see also Texas State Teachers Ass'n v. Garland Ind. Schl. Dist.,* 489 U.S. 782, 791–93, 109 S.Ct. 1486, 1493–94, 103 L.Ed.2d 866 (1989); *Nanetti v. University of Illinois at Chicago,* 944 F.2d 1416, 1419 (7th Cir.1991) ("when time is spent jointly preparing two distinct claims, the fact that one claim produces no recovery will not deprive the plaintiff of every hour spent in joint preparation"); *Zabkowicz v. West Bend Co., Div. of Dart Indus.,* 789 F.2d 540 (7th Cir. 1986). The court may consider the damages sought in relation to the damages award received when determining the extent of the prevailing plaintiff's success. *E.g., Ralstin v. NIPSCO,* 54 Fair Empl.Prac.Cas. 226, 229 (BNA), 1990 WL 258770 (N.D.Ind. Sept. 20, 1990); *Stewart v. County of Sonoma,* 634 F.Supp. 773, 777 (N.D.Cal.1986).

■■■ In *Nanetti,* 944 F.2d at 1417, a university professor sued her employer under Title VII for discriminatory denial of tenure and for a higher salary. The university granted Nanetti tenure, the parties settled the salary dispute, and Nanetti sought an award of attorneys fees. *Id.* In holding that the district court's finding that certain legal work related to both the tenure and salary claims was not an abuse of discretion, the Seventh Circuit explained:

The legal theories in each of Nanetti's claims were the same. Nanetti based her claims on Title VII and its prohibitions against discrimination on the basis of gender. Title VII does not distinguish between discrimination in denial of tenure and discrimination in salary. Both can be unlawful employment practices.

. . . .

The facts underlying each of Nanetti's claims too were similar. The University was a defendant for both claims. In both instances Nanetti would have had to prove at trial that she was a female and that the University intentionally treated her differently from similarly situated male professors. As a result, Nanetti would have had

to investigate who at the University made these decisions, how they were made and their historical results.... In short, legal work on the University's tenure decisions easily could have duplicated legal work on the University's salary decisions.

*Nanetti,* 944 F.2d at 1419 (citation omitted); *see also Tidwell v. Fort Howard Corp.,* 989 F.2d 406, 412–13 (10th Cir.1993); *Zabkowicz,* 789 F.2d at 551 (prevailing plaintiffs may be entitled to award for time spent on claims arising from a common factual core or based on related legal theories). The court may determine whether claims are sufficiently related for purposes of an attorneys fees award by determining whether the claims seek relief from essentially the same course of conduct. *Zabkowicz,* 789 F.2d at 551. Claims that involve a common core of facts, though based on distinct legal theories, are sufficiently related. *Id.*

As in *Nanetti,* and *Zabkowicz,* the legal theories in Ms. Sassaman's claims for sexual harassment and sexual discrimination were the same. Both claims were based on Title VII and its prohibitions against discrimination on the basis of gender. Both sexual harassment and sexual discrimination can be unlawful employment practices. The facts underlying the sexual harassment and sexual discrimination claims were similar. Heart City was a defendant for both claims. Under both claims, Ms. Sassaman would have had to prove at trial that Heart City intentionally treated her differently from similarly situated male salespersons. The legal work on the sexual harassment claim easily could have duplicated legal work on the sexual discrimination claim. The sexual harassment and sexual discrimination claims sought relief from essentially the same course of conduct and therefore for all these reasons, the claims are sufficiently related. Further, the substantial extent of Ms. Sassaman's success is evidenced by the jury's verdict of $22,000 in comparison to the $22,000 in damages Ms. Sassaman sought in the weeks prior to trial. *Ralstin v. NIPSCO,* 54 Fair Empl.Prac.Cas. (BNA) at 229, 1990 WL 258770; *Stewart v. County of Sonoma,* 634 F.Supp. at 777.

Although a more difficult question, the court cannot find that the retaliation claim is distinct in all respects from the sexual harassment claim. The retaliation claim arose from a set of facts that included Ms. Sassaman's filing of an EEOC complaint relating to the sexual harassment and discrimination. Had Ms. Sassaman proved her retaliation claim at trial, the claim would have been premised in part upon the filing of a claim for underlying sexual harassment and discrimination. Furthermore, in light of Ms. Sassaman's settlement offer in the weeks prior to trial, and the jury's verdict in the same amount, the court finds that Ms. Sassaman's overall success in this cause was substantial.

Because Ms. Sassaman's cause of action consisted of related claims, and because she has won substantial relief, her attorneys fees should not be reduced because she did not prevail on all of her claims. *Hensley v. Eckerhart,* 461 U.S. at 440, 103 S.Ct. at 1943; *see also Texas State Teachers Ass'n v. Garland Ind. Schl. Dist.,* 489 U.S. at 791–93, 109 S.Ct. at 1493–94; *Nanetti v. University of Illinois at Chicago,* 944 F.2d at 1419; *Zabkowicz v. West Bend Co., Div. of Dart Indus.,* 789 F.2d 540 (7th Cir.1986). Therefore, the court overrules Heart City's objection to a fee recovery including fees for time spent on the sexual discrimination and retaliation claims.

*Hensley v. Eckerhart* provides further guidance to the court for determining the amount of a reasonable attorneys fee:

The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate. This calculation provides an objective basis on which to make an initial estimate of the value of a lawyer's services. The party seeking an award of fees should submit evidence supporting the hours worked and rates claimed. Where the documentation of hours is inadequate, the district court may reduce the award accordingly.

461 U.S. at 433, 103 S.Ct. at 1939; *see also Spanish Action Committee of Chicago v. City of Chicago,* 811 F.2d 1129, 1137 (7th Cir.1987). The district court "should exclude

from this initial fee calculation" hours that were not "reasonably expended." *Hensley v. Eckerhart*, 461 U.S. at 434, 103 S.Ct. at 1939 (citation omitted). Attorneys fees incurred in litigating fee issues and post-trial motions are recoverable. *Matter of Burlington Northern, Inc. Employment Practices Litigation*, 832 F.2d 430, 434 (holding that *Hensley v. Eckerhart* applies to a fee award for seeking fees); *see also Nanetti v. University of Illinois at Chicago*, 944 F.2d 1416, 1421 (7th Cir.1991) (awarding attorneys fees incurred in preparing and litigating fee petition). Costs incurred in trial preparation are compensable. *Zabkowicz*, 789 F.2d at 553–54; *Ralstin v. NIPSCO*, 54 Fair Empl.Prac. Cas. (BNA) 226, 229–30, 1990 WL 258770 (N.D.Ind. Sept. 20, 1990). The prevailing party may recover interest on attorneys fees and costs awarded from the date the award was entered. *Ohio–Sealy Mattress Mfg. Co. v. Sealy, Inc.*, 776 F.2d 646, 662 (7th Cir. 1985).

██ Heart City raises specific arguments concerning the plaintiff's fee petition. Heart City contends that conversations between plaintiff's counsel and Ms. Sassaman's family are unrelated to Ms. Sassaman's success. The court agrees that the time represented in the entries of 03/17/93 and 07/19/94 relating to telephone conferences with Cullen Walton were not reasonably expended on the litigation. The entries do not allocate the amount of time expended for the individual activities represented. Although these entries encompass other activities for which time was reasonably expended, the court is not required to allocate the time spent on each activity within an entry, and so will disallow the entire entry. The court will deduct these entries and the amounts of $90.00 and $300.00 from the fee award.

██ As to the 08/25/94 and 08/28/94 entries, the court disagrees that the time was not reasonably expended. Those entries reflect that Ms. Sassaman was a party to the conferences that included Mr. Walton. A conference between attorney and client does not become unreasonable simply because another person is present. These latter two entries will be included in the fee award.

██ Heart City contends that pre-litigation activity does not bear a reasonable relation to Ms. Sassaman's success, yet provides no support for its contention. The court cannot agree with that contention. Initial factual and legal research regarding anticipated litigation is not only reasonable, but necessary under Rule 11. The court will allow recovery for time spent on pre-litigation activities.

Because it is well-established that a party may recover attorneys fees for time spent in preparing a fee petition, *see Burlington Northern, Inc.*, 832 F.2d at 434, the court overrules Heart City's objection to preparation time for the fee petition.

██ Heart City also contends that fees incurred with respect to witnesses not called to testify at trial and with respect to the post-traumatic stress disorder theory are not recoverable. Heart City cites no authority for the proposition that the mere fact that a witness did not testify renders time spent with such a witness unreasonable. Ms. Sassaman represents that these witnesses provided information regarding her claims. An attorney may, and should, interview witnesses who have factual information regarding claims asserted. Ms. Sassaman represents that the services of her expert witness, Dr. Funk, were essential in evaluating the opinions rendered by Heart City's expert witness, Dr. Elliott, and in enabling her to call Dr. Elliott as her own witness. Therefore, the court will allow recovery for time spent with the witnesses Dr. Funk, Cecil Kelber, Floyd Husvar, Melissa Clark, and Cullen Walton.

██ Heart City implicitly objects to the entry for September 1, 1994, in which Mr. Hamilton billed 6.5 hours. Heart City contends that "[c]learly not all of this time related to the final day of trial as the jury recessed much before the lunch break. Defendant's lead counsel only charged 4 hours that day." The entry stands on its own. The entry provides in pertinent part:

> Review court's proposed instructions in light of both sides' proposed instructions and prepare objections. Review verdict form carefully in light of new act. Orga-

nize and prepare for final argument. Go to court. Settle instructions. Make final preparations for final argument and present same. Attend instructions to jury. Confs with Janet S. throughout. Return to court for verdict. Receive verdict and conf with Janet S. Return to office and begin preparing fee petition.

The court finds nothing unreasonable about a 6.5 hour expenditure for all of these activities, activities directly related to Ms. Sassaman's final day of trial. The court cannot understand Heart City's contention that Mr. Hamilton could not have completed most of these activities prior to the jury's recess "much before the lunch break." Nothing negates the possibility that much of these activities, including review of the proposed instructions and preparation of final argument by Mr. Hamilton, occurred in the early morning hours before the start of the trial day. Therefore, the court will allow recovery for the 6.5 hours reasonably spent on September 1, 1994.

■ Heart City objects to the entries for 08/25/94, 08/11/94, 08/25/94, and 09/07/94 on the grounds that the witness and mileage fees lack specificity and that some of the witnesses were not called to testify at trial. As in *Ralstin v. NIPSCO*, 54 Fair Empl. Prac.Cas. (BNA) 226, 229–30, 1990 WL 258770 (N.D.Ind. Sept. 20, 1990) (taxing costs for fees for two witnesses who did not testify at trial), the "proper showing of necessity" has been made: the bill of costs has been verified by Mr. Hamilton. Therefore, the court will allow recovery for these items.

Heart City objects to the $80.00 hourly rate charged for Mr. Blackmond as unreasonable and excessive. Heart City does not indicate what rate it would deem reasonable. Heart City contends that the hourly rate is particularly troubling because most of the time charged was spent performing messenger services. *See* Entries at 08/18/94, 08/23/94, 08/24/94, 08/26/94, 08/29/94, 08/30/94, 08/31/94, and 09/01/94. Heart City also objects for the time billed by Mr. Hamilton for filing Ms. Sassaman's trial brief. *See* Entry at 08/19/94. Ms. Sassaman has not responded to these objections.

■ This court has stated previously that "when an attorney performs a task that could be handled by clerical staff, the opponent should not be charged the attorney's hourly rate." *Ralstin v. NIPSCO*, 54 Fair Empl.Prac.Cas. (BNA) at 229, 1990 WL 258770. The filing of papers is a task which could be handled by clerical staff. *Id.* Therefore, the court finds that Heart City should not be charged for Mr. Hamilton's time spent filing Ms. Sassaman's trial brief. Following the reasoning of *Ralstin*, the court agrees with Heart City that the $80.00 hourly rate charged for messenger and delivery services provided by Mr. Blackmond is unreasonable and excessive. Therefore, the court will reduce the hourly rate charged for these services to $35.00 per hour (the rate sought by Heart City for such services). The court is aware that the time charged on September 1, included time spent on legal research, *see* 09/01/94, but the court cannot determine what percentage of the time charged in one entry was spent on any particular activity.

The court disagrees with Heart City's contention that the $80.00 for other (non-messenger type) services performed by Mr. Blackmond, a *cum laude* law school graduate, but unlicensed attorney, is unreasonable. Heart City has provided no authority to support its assertion that the $80.00 hourly rate is unreasonable. On the other hand, Mr. Hamilton has verified in his affidavit that the $80.00 hourly rate is a reasonable one. The court finds that a reasonable hourly rate for a *cum laude* law school graduate not yet licensed to practice is $80.00. Therefore, the court will use $80.00 as the hourly rate for services (other than messenger-type services) provided by Mr. Blackmond.

■ Finally, the court agrees that Mr. Hamilton should be compensated at the $150.00 hourly rate for which he and Ms. Sassaman contracted, rather than the $175.00 hourly rate which is reasonable in the community and which he now charges for new employment discrimination cases. *Gusman v. Unisys Corp.*, 986 F.2d 1146, 1149–1150 (7th Cir.1993) ("A client who retains a lawyer with an hourly rate of $100, when the average in the community is $150, is entitled to

collect from his adversary only $100 for each hour reasonably expended.").

Accordingly, the court finds that Ms. Sassaman should be awarded the following in attorneys fees and costs:

| | |
|---|---|
| Attorney John C. Hamilton (143.4 hours at $150.00 per hour) | $21,510.00 |
| Law graduate Don G. Blackmond II (59.5 hours at $80.00 per hour, and 7.25 hours at $35.00 per hour) | $ 5,013.75 |
| Law clerk Thomas H. Kingston (2 hours at $40.00 per hour) | $ 80.00 |
| TOTAL ATTORNEYS' FEES | $26,603.75 |
| TOTAL ITEMIZED COSTS | $ 3,081.06 |
| TOTAL AWARD | $29,684.81 |

### III. *Conclusion*

For the foregoing reasons, the court now:

(1) DENIES Heart City Toyota's motion for judgment as a matter of law or in alternative, for new trial or remittitur (filed September 16, 1994 (# 66–1) and (# 66–2));

(2) DENIES Heart City Toyota's petition for attorney fees (filed September 16, 1994 (# 66–3));

(3) DENIES Heart City Toyota's motion for oral argument and hearing on petition for attorney fees (filed September 23, 1994 (# 69)); and

(4) GRANTS Janet Sassaman's petition for attorney fees (filed September 8, 1994 (# 61)), AWARDING Ms. Sassaman $26,603.75 in attorneys fees and $3,081.06 in costs for a total award of $29,684.81, to be taxed against Heart City.

The clerk is directed to enter judgment accordingly.

SO ORDERED.