**Janie Lee STEWART, Plaintiff,**

v.

**COUNTY OF SONOMA; Roger McDermott, Sheriff of Sonoma County, Sonoma County Junior College District; Dennis Radabaugh and Donald Cameron, employees of the Junior College District, Defendants.**

No. C-83-5821-WWS.

United States District Court,
N.D. California.

May 1, 1986.

Sanford Jay Rosen, Dara L. Schur, San Francisco, Cal., Chris P. Andrian, Santa Rosa, Cal., for plaintiff.

Robert J. Henry, Legal Counsel, Sonoma County Office of Educ., Santa Rosa, Cal., for Sonoma County Jr. College Dist.

R. Randy Wertz, Barfield, Barfield, Dryden & Ruane, San Francisco, Cal., for Dennis Radabaugh and Donald Cameron.

Michael D. Senneff, Senneff, Bernheim, Enery & Kelly, Santa Rosa, Cal., for County of Sonoma and Roger McDermott, Sheriff.

Michael F. O'Donnell, Nancy A. Nugent, Geary, Shea & O'Donnell, Santa Rosa, Cal., for Louis Nunez, Robert Sotelo, Casey Howard and Gus Zanti.

## MEMORANDUM OF OPINION AND ORDER

SCHWARZER, District Judge.

Before the Court are several post-trial motions in this civil rights action. Both parties have moved for reconsideration of the Court's Title VII ruling, and have accordingly presented the Court with different proposed forms of judgment. Plaintiff has applied for attorneys' fees under 42 U.S.C. § 1988, 42 U.S.C. § 2000e–5(k), and Cal.Gov.Code § 12965. Defendants have moved for a stay of the Court's ruling on attorneys' fees pending the Supreme Court's decision in *Rivera v. City of Riverside,* 763 F.2d 1580 (9th Cir.), *cert. granted,* —— U.S. ——, 106 S.Ct. 244, 88 L.Ed.2d 253 (1985), or alternatively, for further discovery.

### History of the Litigation

On December 8, 1983, plaintiff filed this action against the County of Sonoma, Sheriff McDermott, Louis Nunez, Robert Sotelo, Casey Howard, Gus Zanzi (collectively the "County defendants") and Sonoma County Junior College District, Dennis Radabaugh, and Donald Cameron (collectively the "Junior College defendants"). The complaint alleged that defendants had sexually harassed and retaliated against plaintiff while she was a Deputy Sheriff of Sonoma County, creating an abusive working environment. It alleged violations of equal protection rights under 42 U.S.C. § 1983, of employment discrimination provisions of Title VII, 42 U.S.C. § 2000e–1, and of various state constitutional and statutory provisions.

At the direction of the Court, in February and March, 1985, the parties prepared and exchanged detailed statements of factual contentions. These statements disclosed a number of events during the period 1981–1983 which according to plaintiff had some bearing on her charge of sexual

harassment. There was relatively little dispute as to the events themselves but considerable dispute both as to exactly what happened and as to the significance of the events in relation to plaintiff's claims. It became apparent, however, and was later confirmed by plaintiff's proof at trial, that the central issue in the action concerned the events at block training in April 1983, and the alleged retaliatory threats by Sheriff's deputies against plaintiff later that month because of plaintiff's complaints about them. Block training was a one-week law enforcement training seminar held by the Sonoma County Sheriff's Department at Santa Rosa Junior College. Plaintiff claimed that she had been sexually taunted and touched by sheriff's deputies during the seminar and that threats were made against her later when she complained to the Sheriff. Defendants denied these charges.

On March 11, 1985, the County defendants made a Rule 68 offer of judgment for $200,000 plus costs and attorneys' fees to be determined by the Court. On March 19, 1985, plaintiff rejected the offer, asserted that it was defective under Rule 68 because it had not been served on co-defendants Radabaugh and Cameron, and made a counter-offer of $325,000 plus costs and attorneys' fees. On April 10, 1985, the County defendants filed a waiver of notice of the Rule 68 offer by the Junior College defendants.

In June 1985, plaintiff and the Junior College defendants settled her claims against them for $25,000 plus attorneys' fees to be fixed by the Court. On October 21, 1985, the Court granted defendant Nunez's motion to dismiss. The case went to trial before a jury on October 29, 1985. At the start of the trial, plaintiff dismissed with prejudice all of her claims against defendant Zanzi, and her federal claims against defendants Sotelo and Howard, and dismissed without prejudice her state claims against Sotelo and Howard.

The trial proceeded on plaintiff's six remaining claims against the County and the Sheriff. After 20 days of trial, the jury returned a general verdict for plaintiff of $50,000. The Court subsequently ruled for plaintiff on her Title VII claim, and awarded her an additional $34,600 to bring her total damages to an amount equal to the lost back pay and six months' front pay for retraining. These motions followed.

*The Rule 68 Offer*

■ Plaintiff contends that the County defendants' Rule 68 offer was invalid because it was not timely served on defendants Radabaugh and Cameron. Rule 68 states as to service, that "a party defending against a claim may serve upon the adverse party an offer...." Rule 5(a), the general service rule, states that "[e]xcept as otherwise provided in these rules, every ... offer of judgment ... shall be served upon each of the parties." Inasmuch as Rule 68, which deals specifically with offers of judgment, allows a party to serve it "upon the adverse party," it may be inconsistent with Rule 5(a) and hence fall within the "otherwise provided" clause.

Even if Rule 5(a) were held to apply, it is difficult to see how defendants' failure to serve a codefendant should enable the plaintiff to escape the obligations of Rule 68. No prejudice to plaintiff flowing from the service failure has been demonstrated, and none is conceivable. If there were prejudice to codefendants, plaintiff would have no standing to raise it and it has in any event been cured by the filing of their waivers. Accordingly, the offer of judgment was valid. *Cf. Scheriff v. Beck*, 452 F.Supp. 1254, 1259 (D.Colo.1978) (procedural error in Rule 68 offer correctable by subsequent action).

■ Plaintiff also contends that Rule 68 does not apply because it cannot be determined whether "the judgment finally obtained ... is not more favorable than the offer." This is said to be true because three of the individual County defendants were dismissed before trial and actions against them remain pending in state court. Plaintiff claims that eventually her total recovery against all County defendants may exceed the amount of the offer.

It seems clear from the language of the rule that it contemplates only the judgment rendered in the action in which the offer is made. Had the result claimed by plaintiff been intended, the rule would have referred to recovery instead of judgment. Moreover, any other interpretation, aside from being strained and illogical, would open a large gap in the rule and introduce considerable uncertainty over just when a judgment finally obtained is or is not more favorable. To so undermine the utility of this rule would be inconsistent with the Supreme Court's treatment of it as an important settlement device. *See Marek v. Chesny,* —— U.S. ——, 105 S.Ct. 3012, 87 L.Ed.2d 1 (1985).

Rule 68 requires the unsuccessful offeree to "pay the costs incurred after the making of the offer." In *Marek v. Chesny,* the Supreme Court held that costs as used in Rule 68 include statutory attorneys' fees. Defendants argue that *Marek* should be applied to bar an award for post-offer attorneys' fees.

*Marek* was decided in June 1985, three months after defendants' offer. At the time the offer was made, plaintiff had no reason to expect that it would affect her ability to collect statutory attorneys' fees. The *Marek* decision clearly creates a different set of conditions under which civil rights plaintiffs must evaluate Rule 68 offers. To apply it retroactively would significantly prejudice plaintiff. *See Gibson v. United States,* 781 F.2d 1334, 1339 (9th Cir.1986) (no retroactive application of shortened statute of limitations); *Rivera v. Green,* 775 F.2d 1381 (9th Cir.1985) (retroactive application of lengthened statute of limitations).

Accordingly, defendants' Rule 68 offer will be given effect but only to bar plaintiff's recovery of taxable costs incurred after March 11, 1985.

*Motion For Stay of Proceedings or For Leave to Conduct Additional Discovery*

Defendants ask that the fee application proceedings be stayed pending a decision by the Supreme Court in *City of Riverside v. Rivera, supra.* In that case an award of attorneys' fees greatly in excess of the amount of damages recovered is under review. It is thought that the issue of proportionality is implicated.

There is no need for a stay. Attorneys' fees applications must be decided on the facts of each case. The general principles governing disposition of this application are adequately stated in *Hensley v. Eckerhart,* 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983), and other cases.

There is also no need for further discovery. "A request for attorney's fees should not result in a second major litigation." *Hensley, supra,* 461 U.S. at 437, 103 S.Ct. at 1941. The parties have amassed an abundant record on this application; the Court, having presided over this case since its filing, is familiar with it and is unable to envision any additional useful information that discovery might generate.

*Motion to Reconsider the Title VII Award*

Both parties have moved to reconsider the Court's Title VII ruling. In finding liability, the Court, as it stated in advance that it would, accepted the jury verdict as advisory. In awarding damages, the Court exercised its discretion to fix an award that in the aggregate would compensate plaintiff in full for lost back pay and for the cost of retraining for a new occupation. The motions are without merit and will be denied.

*Attorneys' Fees*

Plaintiff seeks attorneys' fees from the County defendants in an amount of $925,-157.55, consisting of compensation of $784,-764.01 for 5,465.14 hours of attorneys' time, $106,988.98 for disbursements and $26,399.59 as taxable costs.[1] In addition,

---

**1.** These figures include the fees requested for preparation of the application for fees. To the extent plaintiff is entitled to fees on fees, the award made by the Court includes those fees as well as attendant expenses.

pursuant to the settlement with the Junior College defendants, she seeks attorneys' fees and disbursements from them in the amount of $37,658.19.

In *Hensley v. Eckerhart, supra,* 461 U.S. at 433, 103 S.Ct. at 1939, the Court said:

> The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate. This calculation provides an objective basis on which to make an initial estimate of the value of a lawyer's services.

Plaintiff has submitted adequate documentation supporting the fact of the hours worked and the disbursements incurred. Defendants question the accuracy of some of the entries and the reasonableness and necessity of others. In view of the magnitude of the fee request, however, it would serve no useful purpose to tackle it by making particularized adjustments. The principle that controls the disposition of this application was stated in *Hensley:*

> If, ... a plaintiff has achieved only partial or limited success, the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount. This will be true even where the plaintiff's claims were interrelated, nonfrivolous, and raised in good faith. Congress has not authorized an award of fees whenever it was reasonable for a plaintiff to bring a lawsuit or whenever conscientious counsel tried the case with devotion and skill. Again, *the most critical factor is the degree of success obtained.*
>
> * * * * * *
>
> That the plaintiff is a "prevailing party" ... may say little about whether the expenditure of counsel's time was reasonable in relation to the success achieved.

*Id.* at 436, 103 S.Ct. at 1941 (emphasis added).

■ Where a plaintiff has succeeded on some but not on other claims, it may be feasible to identify the services associated only with the successful claims and limit recovery to the fees related to those services. But where plaintiff has prevailed on what is essentially a single claim but has recovered a judgment well below the amounts offered and demanded in pretrial settlement negotiations, a different problem is presented. The Supreme Court recognized that there may be more than one way to address that problem when it said:

> The district court may attempt to identify specific hours that should be eliminated, or it may simply reduce the award to account for limited success.

*Id.* at 436–37, 103 S.Ct. at 1941.

■ The settlement history of this case establishes that plaintiff was only a marginally prevailing party. Six months before trial plaintiff had offered to settle for $325,000 plus attorneys' fees (a figure later indicated to be negotiable) while defendants had offered from about $60,000 to $200,000. At trial plaintiff sought to prove economic loss ranging up to $750,000 plus intangible injury from invasion of constitutional and other rights in an indeterminate but substantial amount. The jury verdict of $50,000, to which the Court later added $34,600, plus the $25,000 received in settlement with the Junior College defendants show that, in monetary terms, the "success obtained" was at best slight, far lower than plaintiff's demand and below even the County defendants' offers. The monetary value of the recovery is not the sole measure of success where plaintiff has received structural or other injunctive relief vindicating civil rights. *Hensley* at 436, n. 11, 453–54, 103 S.Ct. at 1940–41, n. 11, 1950 (Brennan, J., concurring and dissenting). But that is not this case. Plaintiff sued only in her own behalf, made a case only for monetary relief, and did not establish the need for or obtain relief with respect to conditions of employment for women in the Sonoma County Sheriff's Department.

Thus, where, as here, "the plaintiff achieved only limited success, the district court should award only that amount of fees that is reasonable in relation to the results obtained." *Id.* at 440, 103 S.Ct. at

1943. The reported decisions afford little guidance, however, on how to arrive at a principled basis for making such an award. Understandably, the decisions for the most part have awarded fees to plaintiffs who had genuinely prevailed; the 12 factors that frame the conventional analysis are designed to measure success, not failure. *See Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714, 717–19 (5th Cir.1974); *Kerr v. Screen Extras Guild, Inc.,* 526 F.2d 67 (9th Cir.), *cert. denied,* 425 U.S. 951, 96 S.Ct. 1726, 48 L.Ed.2d 195 (1976). The Court has considered those factors but, except for the reference to "the amount involved and the results obtained," finds them of little assistance here.[2]

■ The customary starting point for the setting of fees is the lodestar: the number of hours reasonably expended multiplied by the reasonable hourly rate. But "there may be circumstances in which the basic standard of reasonable rates multiplied by reasonably expended hours results in a fee that is either unreasonably low or unreasonably high." *Blum v. Stenson,* 465 U.S. 886, 897, 104 S.Ct. 1541, 1548, 79 L.Ed.2d 891 (1984). In this case where plaintiff seeks a lodestar of nearly $800,000, it cannot be said that she achieved "a level of success that makes the hours reasonably expended a satisfactory basis for making the fee award." *White v. City of Richmond,* 713 F.2d 458, 462 (9th Cir. 1983). Because the lodestar and the result obtained are so grossly disproportionate, the latter must serve as the principal bench mark if the intent of Congress to avoid windfalls for lawyers is to be carried out.

It would be inappropriate, however, to apply a rigid mathematical approach. In cases where non-monetary relief is obtained, the amount of the monetary recovery would be of limited relevance to the amount of the fee. Moreover, the amount of the recovery does not necessarily establish what would be a reasonable fee, taking into account not only the amount of lawyers' time reasonably expended but also

the policy underlying § 1988 to encourage competent lawyers effectively to represent civil rights plaintiffs. *See Evans v. Jeff D.,* —— U.S. ——, 106 S.Ct. 1531, 89 L.Ed.2d 747 (1986) (Brennan, J., dissenting).

Nor in view of the gross disparity between the lodestar and the result obtained does it seem practical to apply an arbitrary downward adjustment to the lodestar; no basis suggests itself for the application of any particular percentage. *Cf. Sherlock v. Hogue,* 571 F.Supp. 190 (E.D.Pa.1983). The mandate to the district courts is to articulate a rationale for a downward adjustment, *Cunningham v. City of McKeesport,* 753 F.2d 262 (3d Cir.1985), but since that mandate has not been accompanied by specific guidance, the courts are left to sail on an uncharted sea. *See* Report of the Third Circuit Task Force: Court Awarded Attorney Fees, 108 F.R.D. 237 (1985).

Another significant bench mark for the setting of fees is the amount involved—not the amount ultimately recovered, but the apparent value of the case on which a competent lawyer would base a judgment as to the magnitude of the litigation effort to be undertaken. In making that judgment plaintiff's counsel knew that the gravamen of her complaint involved conduct by some of her fellow deputies, not supervisors, during a period of only one month. Although discovery disclosed various incidents of friction during the preceding two years, plaintiff's position was that she had been able to perform her duties satisfactorily until April, 1983, when she participated in a week of block training. There, she claimed, fellow deputies had taunted her and, in the course of one exercise, touched her in a way she found sexually offensive and later made what she regarded as threatening statements and ostracized her. Upset over her treatment, she left work. During the succeeding two years, she suffered emotional distress, at times severe.

Plaintiff's claim was not based on sexual harassment by superiors. The facts which she asserted were vigorously disputed.

---

2. For a discussion of the inadequacy of these factors as a practical analytical framework for

setting fees, *see Copeland v. Marshall,* 641 F.2d 880, 890 (D.C.Cir.1980) (en banc).

There was evidence that she had herself taken part in some of the sexually-oriented misconduct and her asserted injuries were to a large extent brought on by her stormy relationship with her former husband and his ex-wife.

A reasonable attorney evaluating this case would have assessed its verdict value as modest.[3] While there might have been an outside chance to recover a verdict in the range of $150,000–$400,000, a verdict of less than $100,000 was far more likely, given the disputed nature of the conduct, the brief time period during which it occurred, and the weak evidence of resulting trauma.

That this is a fair evaluation of the case is confirmed by the settlement history which the parties have placed before the Court. Prior to March 1985, defendants offered to settle for $65,000. In March they made a Rule 68 offer of $200,000, plus attorneys' fees and costs. Plaintiff responded with a demand of $325,000 plus attorneys' fees and costs. Defendants then withdrew their offer. In May 1985, plaintiff offered to settle for $200,000 plus attorneys' fees and costs. Defendants offered $75,000.

Because settlement offers and demands often take into account tactical and strategic considerations, they cannot be viewed as conclusive indications of the value of the claims in litigation. But in this case, the settlement negotiations which moved within a relatively narrow range, clustering around $200,000, are a valid bench mark of the pre-verdict value of the case.

These considerations, no less than the final outcome, enter into billing judgment, as important a factor in setting fees under § 1988 as in the private sector. *Hensley,* 461 U.S. 434, 448, 103 S.Ct. at 1939–40, 1947 (Brennan, J., concurring and dissenting). Billing judgment rules out the submission of a bill for services and disburse-ments of $925,000 for a case with a probable verdict value of $100,000 or less, which the client was prepared to settle for $200,000, and which results in a recovery of $109,600. *See Ursic v. Bethlehem Mines,* 719 F.2d 670, 678 (3d Cir.1983) (billing judgment essential where case produces minimum benefits and only for prevailing party).

Plaintiff contends that all of the hours billed were reasonably expended. But what is reasonable in litigation must necessarily depend on "the needs of the case, the amount in controversy, ... the parties' resources, and the importance of the issues at stake ..." Fed.R.Civ.P. 26(b). All civil rights litigation is not cut from the same cloth. The claims in this action were not presented for the benefit of a protected class, but rather for plaintiff's personal benefit. Given the narrow scope and limited impact of the asserted misconduct, the expenditure of lawyers' time was grossly disproportionate to what was at stake. This case did not warrant ten lawyers from two law offices representing plaintiff, generating an aggregate of over 5,400 hours, the equivalent of two lawyers working full time through the entire period from the day counsel was retained to the return of the verdict.[4] The extent to which this case was overlawyered is illustrated by the request for fees of $46,000 for the fee application alone, prepared after the jury had returned a verdict in approximately the same amount.

■ Lawyers representing civil rights plaintiffs should, of course, not be penalized for diligent preparation simply because they fail to win a favorable judgment. However, billing judgment is an important component in setting statutory fees as it is in private fee setting. "Hours that are not properly billed to one's client also are not properly billed to one's adversary pursuant

---

3. Anticipating the very problem now before it, the Court cautioned counsel to this effect throughout the pretrial proceedings.

4. *Compare Laffey v. Northwest Airlines,* 572 F.Supp. 354, 361 (D.D.C.1983), a vigorously liti-gated sex discrimination case brought on behalf of a class of flight attendants in which plaintiffs' attorneys expended some 13,000 hours in 13 years of litigation.

to statutory authority." *Hensley* at 434, 103 S.Ct. at 1940, *quoting Copeland v. Marshall*, 641 F.2d 880, 891 (D.C.Cir.1980). Because a civil rights plaintiff, unlike the usual paying client, has no incentive to monitor his attorney's hours, it is particularly important for the courts to do so.

In reaching the conclusion that the number of hours for which compensation is sought is unreasonable, the Court has also considered the kind of defense presented by defendants. While it is clear that the case was vigorously defended, the Court did not observe tactics or conduct by defense counsel which might account for the extraordinary amount of time expended by plaintiff's counsel. On the contrary, defense counsel made settlement overtures beginning well over a year before trial but plaintiff then chose not to pursue them, presumably because of her inflated view of the value of the case.

Civil rights litigation has an element of contingency for plaintiffs' attorneys, a factor courts must consider in setting fees. *Kerr v. Screen Extras Guild, Inc., supra,* 526 F.2d at 70. The record does not disclose whether plaintiff had made a contingent fee contract with her attorneys. Regardless of whether there is such a contract, the contingency element allows courts to take into account excellent results in setting a fee that might be excessive if based on hours alone. *Blum, supra,* 465 U.S. at 897, 104 S.Ct. at 1548; *Hensley, supra,* 461 U.S. at 448–49, 103 S.Ct. at 1947–48 (Brennan, J., concurring and dissenting). To the extent, then, that contingency is a factor, the rate at which lawyers are compensated under contingent fee arrangements is some evidence of market rates for services and hence an additional bench mark. *See Kirchoff v. Flynn,* 786 F.2d 320, 324 (7th Cir.1986). Under a contingent fee agreement, plaintiff's attorneys would recover between $35,000 and $40,-000.

Taking into account these bench marks, the Court concludes that a fee in the amount of $100,000 would be reasonable:

> it is within the range of the most likely verdict as well as the actual recovery; it is approximately half of the apparent settlement value and as such consistent with billing judgment; it is well in excess of the probable recovery under a contingent fee agreement and hence sufficient to provide an incentive for a lawyer to take such a case; it represents adequate compensation considering the nature of the case and what was at stake.[5]

Because plaintiff has entered into a settlement with the Junior College defendants providing for the payment of fees, the aggregate fee must be allocated between them and the County defendants. Plaintiff has allocated 237 hours to work attributable to the claim against the College—approximately 4% of the total hours. The recovery from the College ($25,000) represents approximately 22% of the total recovery. Applying the resulting mean of 13% to the fee award produces an allocation of $13,000 to the Junior College defendants. The Court finds this to be a reasonable fee to assess against these defendants, considering the minor part they played in the events that led to this litigation.

The two law offices representing plaintiff in this action (the offices of Sanford Jay Rosen and of Chris P. Andrian) submitted separate itemizations of their hours and hourly charges. According to the documentation the Rosen office expended 3.7 times the number of hours expended by the Andrian firm. While the Court has found that the lodestar approach should not be used to determine the amount of fees in this case, the ratio of lawyers' hours expended is a reasonable method of allocating the fee award between the two offices. Accordingly, fees will be awarded as follows:

| | | |
|---|---|---|
| 150 hours of partners at $210/hr. | = | $31,500 |
| 500 hours of associates at $120/hr. | = | 60,000 |
| 170 hours of paralegals at $50/hr. | = | 8,500 |

---

5. The fee allowed would support the following billing:

| For the Rosen office— | against the County | – $68,490 |
| | against the College | – 10,234 |
| | Total | – $78,724 |
| For the Andrian office– | against the County | – $18,510 |
| | against the College | – 2,766 |
| | Total | – $21,276 |

## Disbursements and Costs

Plaintiff is entitled to taxable costs incurred up to March 11, 1985. The cost bill submitted conforms to Local Rule 265-1 and Appendix A. Defendants have made no objection to it. Accordingly, plaintiff will recover costs in the aggregate amount of $10,768.78, payable $5,171.83 to the Rosen office and $5,452.90 to the Andrian office.

In addition plaintiff seeks to be reimbursed for expenses aggregating $106,-988.98 ($55,229 for the Rosen office; $51,-759.98 for the Andrian office). In the light of the factors governing the award of reasonable fees, the amount of these expenses is extravagant and in excess of what might reasonably be billed to a client in this case. Specifically, the claim for the following items is insufficiently supported, either for lack of adequate documentation or for failure to demonstrate that they were reasonably necessary, or both:

### Rosen office:

| | |
|---|---|
| Rufus Kennedy | $ 200.00 |
| Susan Saxe-Clifford | 2,404.93 |
| Dr. Aaron | 3,375.00 |
| Dr. Chaffin | 1,687.50 |
| Anderson—Davis | 2,853.00 |
| National Jury Project | 1,694.65 |
| E. Abbot | 2,151.42 |
| Reynolds Investigative Service | 18,000.00 |
| | $32,366.50 |

### Andrian office:

| | |
|---|---|
| Podboy examinations | $ 2,175.00 |
| Vital Personnel Services | 442.12 |
| D. Livingston examination | 675.00 |
| Samuel Brown | 200.00 |
| Drs. Bodle, et al. | 120.00 |
| Trinity properties | 2,400.00 |
| Pacific Bell | 224.00 |
| Food items | 480.77 |
| Reynolds travel expense | 400.00 |
| Cleaning service | 90.00 |
| Reynolds Investigative Service | 22,165.17 |
| Ben Zion—expert | 6,435.00 |
| | $35,807.06 |

The balance of the disbursements will be allowed, $22,862.50 to the Rosen office and $15,952.92 to the Andrian office.

Plaintiff claims reimbursement for word processing expense in the aggregate amount of $20,822.75. At cost based rates, the word processing charge is $10,991.75. Inasmuch as word processing is customarily billed to clients, this is an appropriate charge, limited to actual cost. The amount sought must, however, be reduced to reflect the fee reduction. Accordingly the Rosen office is allowed $5,000.00 for word processing.

Costs, disbursements and word processing will be allocated between the County and the College in the same ratio as fees.

### Summary

For the reasons stated the Court awards the plaintiff:

On account of the Rosen office

Against the County

| | |
|---|---|
| Fees | $68,490.00 |
| Costs | 4,499.83 |
| Disbursements | 19,890.50 |
| Word Processing | 4,350.00 |
| Total | $97,230.33 |

Against the College

| | |
|---|---|
| Fees | $10,234.00 |
| Costs | 672.00 |
| Disbursements | 2,972.00 |
| Word Processing | 650.00 |
| Total | $14,528.00 |

On account of the Andrian office

Against the County

| | |
|---|---|
| Fees | $18,510.00 |
| Costs | 4,743.90 |
| Disbursements | 13,878.92 |
| Total | $37,132.82 |

Against the College

| | |
|---|---|
| Fees | $ 2,766.00 |
| Costs | 709.00 |

Against the College

| | |
|---|---|
| Disbursements | $ 2,074.00 |
| Total | $ 5,549.00 |
| County Total | $134,363.15 |
| College Total | $ 20,077.00 |

IT IS SO ORDERED.