**Patricia A. INKS, Plaintiff,**

v.

**HEALTHCARE DISTRIBUTORS OF INDIANA, INC., et al., Defendants.**

No. 3:93–CV–812RM.

United States District Court, N.D. Indiana, South Bend Division.

June 5, 1995.

---

Aladean M. DeRose, South Bend, IN, for Patricia A. Inks.

Thomas J. Brunner, Jr., Paul J. Peralta, Baker and Daniels, South Bend, IN, for Healthcare Distributors of Indiana, Inc. and Bergen Brunswig Corp.

---

## MEMORANDUM AND ORDER

MILLER, District Judge.

This cause comes before the court on Patricia Inks' motion to reconsider denial of front pay and petition for attorney's fees and costs, and the defendants' motion for remittitur of damages or in the alternative for a new trial. For the following reasons the court denies Mrs. Inks' motion to reconsider the front pay issue, denies the defendants' motion for remittitur or in the alternative for new trial and grants Mrs. Inks' motion for an award of attorney's fees and costs.

Patricia Inks sued her former employer, Healthcare Distributors of Indiana, Inc. ("HDI"), and the company that subsequently acquired HDI, Bergen Brunswig Corporation, under the Civil Rights Acts of 1964 and 1991 and the Age Discrimination in Employment Act, alleging sex and age discrimination. After a four-day jury trial, the jury returned a verdict for Mrs. Inks on her age discrimination claim with an additional finding that HDI's conduct with regard to Mrs. Inks' age was willful. The jury awarded Mrs. Inks $15,000.00 in back pay (including prejudgment interest), and in an advisory verdict, awarded Mrs. Inks $10,000.00 in front pay. *See, e.g., Downes v. Volkswagen of America, Inc.,* 41 F.3d 1132, 1142 (7th Cir.1994) ("The court may submit the issue [of front pay] to the jury for advice, but it is not bound by the jury's advisory verdict.").

At a post-trial hearing, the court noted that prejudgment interest is not awardable when liquidated damages are awarded. *See Fortino v. Quasar Co.,* 950 F.2d 389, 397 (7th Cir.1991). Therefore, the court discounted the jury's $15,000.00 award of back pay by a rate of 6% to subtract out the award of prejudgment interest, reducing the back pay award to $12,797.00. That calculation is not at issue in any of the present motions. The court also determined that front pay should not be awarded, and accordingly refused to award Mrs. Inks any amount of front pay damages. Because the jury found that HDI's conduct in violating the ADEA was willful, the $12,797.00 back pay award was doubled to $25,594.00, and the clerk entered judgment in that amount.

### I. Motion to Reconsider Denial of Front Pay

Mrs. Inks seeks reconsideration of the court's denial of front pay, contending that front pay is required as a "make whole" remedy when reinstatement is not feasible. She makes this motion pursuant to Fed. R.Civ.P. 59(e), which simply states that a "motion to alter or amend the judgment shall be served not later than 10 days after entry of the judgment."

> Rule 59(e) permits a district court to entertain a motion to alter or amend a judgment. A claimant can invoke the rule to direct a court's attention to matters such as newly discovered evidence or a manifest error of law or fact. The rule essentially enables a district court to correct its own errors, sparing the parties and the appellate courts the burden of unnecessary appellate proceedings.

*Russell v. Delco Remy Division of General Motors Corporation,* 51 F.3d 746, 749 (7th Cir.1995) (citations omitted).

> [A] motion to alter or amend a judgment is not appropriately used to advance arguments or theories that could and should have been made before the district court rendered a judgment, or to present evidence that was available earlier. Instead, a Rule 59(e) motion "must clearly establish either a manifest error of law or fact or must present newly discovered evidence." The decision to grant or deny relief on such a motion is one we entrust to the district court's sound judgment.

*LB Credit Corporation v. Resolution Trust Corporation,* 49 F.3d 1263, 1267 (7th Cir. 1995) (citations omitted).

At the post-trial hearing, the court declined to award front pay to Mrs. Inks after weighing several factors: (1) although an award of liquidated damages cannot be the sole basis for precluding an award of front pay, the court found that the liquidated damages award nevertheless was a factor to be considered; (2) the court also considered the degree of certainty of continued employment, and concluded that it was entirely less than clear that Mrs. Inks would have stayed employed at HDI or Bergen Brunswig; (3) the court found no basis or authority for the requested award of seven years of front pay; (4) the court found that there was no evidence that Mrs. Inks would actually suffer significant future damages because the salary and benefits received from her new employer, Nephrology, Inc., are reasonably close to those received from HDI. Indeed, Mrs. Inks' supervisor at Nephrology, Inc. testified at trial that Mrs. Inks had not received a raise at Nephrology, Inc. only because of oversight.

 Although Mrs. Inks' motion does not clearly articulate that it is founded on an alleged manifest error of law, the absence of newly acquired evidence suggests that this is the motion's premise. Her motion primarily relies upon a policy statement issued by the Equal Employment Opportunity Commission in 1988, which suggests that the district court should award front pay when necessary to ensure that the plaintiff is made whole, and that an award of liquidated damages should not militate against front pay. This court, however, is bound by the holdings of the Seventh Circuit, rather than by the policy statements of the EEOC, and the Seventh Circuit has spoken to these issues:

> When reinstatement is infeasible or inappropriate, front pay may be appropriate to make the plaintiff whole. In determining whether to award front pay, the court should consider all the circumstances of the case.... Front pay may be indicated especially when the plaintiff has no reasonable prospect of obtaining comparable employment or when the time period for

which front pay is to be awarded is relatively short.... On the other hand, front pay may be less appropriate when liquidated damages are awarded.... The decision to award front pay is, of course, within the discretion of the district court.

*McNeil v. Economics Laboratory, Inc.,* 800 F.2d 111, 118–19 (7th Cir.1986), *cert. denied,* 481 U.S. 1041, 107 S.Ct. 1983, 95 L.Ed.2d 823 (1987); *see also Downes v. Volkswagen of America, Inc.,* 41 F.3d at 1141 ("In deciding whether to award front pay, the court considers such factors as whether the plaintiff has a reasonable prospect of obtaining comparable employment, whether the time period for the award is relatively short, whether the plaintiff intended to work or was physically capable of working and whether liquidated damages have been awarded."); *Tennes v. Commonwealth of Massachusetts,* 944 F.2d 372, 381 (7th Cir.1991) ("Neither reinstatement nor front pay are mandatory relief under the ADEA; both lie within the sound discretion of the trial court after careful consideration of the particular facts of the case."); *United States Equal Employment Opportunity Commission v. Century Broadcasting Corp.,* 957 F.2d 1446, 1463–64 (7th Cir.1992) (award of liquidated damages is relevant to front pay issue if "a front pay award would be highly speculative due to the lengthy period for which damages are sought and the lack of certainty that plaintiff would have remained employed during such a lengthy period"); *Price v. Marshall Erdman & Associates, Inc.,* 966 F.2d 320, 327 (7th Cir.1992) (risk of noncontinuity of future employment in a volatile field must be considered in determining an award of front pay).

 The court applied the governing law of the Seventh Circuit when it declined to award front pay to Mrs. Inks. Aside from the fact that Mrs. Inks was awarded liquidated damages, the court also found that front pay was a speculative award because HDI was acquired by Bergen Brunswig soon after Mrs. Inks' discharge, and that there was no evidence suggesting that Mrs. Inks would have been rehired as an employee of Bergen Brunswig, or that she would have continued her employment for seven years. *See United States Equal Employment Op-*

*portunity Commission v. Century Broadcasting Corp.*, 957 F.2d at 1463–64 (award of liquidated damages is relevant to front pay issue if "a front pay award would be highly speculative due to the lengthy period for which damages are sought and the lack of certainty that plaintiff would have remained employed during such a lengthy period"); *Downes v. Volkswagen of America, Inc.*, 41 F.3d at 1142 ("It is, of course, true that a front pay award must be grounded in available facts, acceptable to a reasonable person and not highly speculative."). Finally, the court also based its determination on the fact that Mrs. Inks had found comparable employment within four months of her termination. *See McNeil v. Economics Laboratory, Inc.*, 800 F.2d at 118 ("front pay may be indicated especially when the plaintiff has no reasonable prospect of obtaining comparable employment"). After reviewing its decision, the court is unconvinced that the decision not to award front pay constituted a manifest error of law,[1] and so denies Mrs. Inks' Rule 59(e) motion for reconsideration of the denial of front pay.

## II. *Motion for Remittitur or New Trial*

The defendants have moved for remittitur, or in the alternative, for a new trial, with respect to the $12,797.00 back pay award. The defendants contend that the $12,797.00 amount awarded as back pay bears no reasonable relationship to Mrs. Inks' evidence presented at trial, and thus that the award could only have been the product of passion, a manifest disregard of the evidence and law, or both. Therefore, the defendants request that the back pay damages be reduced to the sum of $3,066.66, or alternatively, that the court order a new trial on the back pay damages.

▇▇▇ When presented with a motion for a new trial,

the district court must consider "if the verdict is against the weight of the evidence, the damages are excessive, or if for other reasons the trial was not fair to the moving party." When the motion is based primarily on the excessive nature of the damages, the jury's award may be vacated and a new trial granted only if the verdict "is 'monstrously excessive' or if there is 'no rational connection between the evidence on damages and the verdict.'" We thus review damages evidence in the light most favorable to the jury's verdict, and the verdict must stand unless there is no rational connection between the evidence and the jury's award.

*McNabola v. Chicago Transit Authority*, 10 F.3d 501, 516 (7th Cir.1993); *see also Kristufek v. Hussmann Foodservice Co.*, 985 F.2d 364, 371 (7th Cir.1993) ("The jury's calculations are findings which we will not disturb unless clearly erroneous and without substantial supporting evidence."); *Sassaman v. Heart City Toyota*, 879 F.Supp. 901, 910 (N.D.Ind.1994). The standard for remittitur of a jury's award of damages is the same as for a new trial on the issue of damages. *See, e.g., Frazier v. Norfolk & Western Railway Co.*, 996 F.2d 922, 925 (7th Cir.1993) ("trial judges may vacate a jury's verdict for excessiveness only when they determine that the award was 'monstrously excessive' or that there was 'no rational connection between the evidence on damages and the verdict'").

▇▇▇ The defendants contend that the $12,797.00 in back pay awarded by the jury bears no rational relationship to the evidence Mrs. Inks presented at trial. The defendants contend that the undisputed evidence demonstrated that Mrs. Inks received three forms of post-termination payments substantially diminishing her lost wages following her January 29, 1992 discharge from HDI, including: (1) two months' severance pay; (2) three weeks' vacation pay; and (3) $234.00 in unemployment compensation. Further, Mrs.

---

1. In a supplemental citation of legal authority, Mrs. Inks contends that the Supreme Court's decision in *McKennon v. Nashville Banner Publishing Co.*, —— U.S. ——, 115 S.Ct. 879, 130 L.Ed.2d 852 (1995) supports her theory that an award of front pay is presumed when reinstatement is not feasible. The *McKennon* case only considered whether all relief must be denied to a

plaintiff who has been discharged in violation of the ADEA and the employer later discovers some wrongful conduct that would have led to discharge if it had been discovered earlier. The court finds no basis in the *McKennon* case for a presumption that front pay must be awarded when reinstatement is impossible.

Inks became reemployed with Nephrology, Inc. on May 18, 1992 at a rate of pay comparable to that she had received at HDI.

The jury was instructed with respect to calculating back pay in Instruction No. 17, which reads, in part, as follows:

> If you find that the defendants committed unlawful discrimination, the plaintiff is entitled to damages, consisting of wages and benefits she would have received if the defendants had not discharged her. This amount includes the wages and benefits, including increases in wages and benefits, that Mrs. Inks would have received from the date she was discharged to the date of your verdict. From that amount, you should subtract the wages or earnings she received from other jobs during the same period. The amount to be subtracted would also include any severance pay the plaintiff received after her discharge.

The defendants contend that the jury was obligated to subtract from the amount of possible back pay the two months' severance pay, the three weeks' vacation pay, the $234.00 paid in unemployment compensation, and the earnings or wages Mrs. Inks received from her Nephrology job. The court agrees that the jury was obligated to subtract from its calculation of back pay the two months' severance pay Mrs. Inks received from HDI upon her discharge and the wages and earnings she received from Nephrology, but the defendants have offered no support for their contention that the jury was also obligated to subtract the three weeks' vacation pay and the $234.00 in unemployment compensation.[2] The jury instruction quoted above did not require the jury to subtract these additional amounts from its initial calculation. Nor did the defendants offer an alternate jury instruction that would have so instructed the jury; indeed, Instruction No. 17 was based in large part on two proposed instructions tendered by the defendants. The court cannot agree with the defendants that those factors necessarily should have reduced the back pay award.

Ms. Inks was unemployed for almost four months following her discharge from HDI. The defendants contend that since she was earning about $23,000.00 a year at the time of her discharge, her monthly earnings amounted to $1,916.66, and since her back pay must be reduced by her severance pay, vacation pay and unemployment compensation, her back pay award should only have been for one month—$1,916.66. The defendants concede that since Mrs. Inks participated in HDI's profit-sharing plan, she could also make a claim for 5% of her total income until the time HDI was acquired by Bergen Brunswig on January 29, 1993, totalling $1,150.00. Thus, the defendants contend that the evidence only supported a back pay award of $3,066.66.

As previously stated, the court does not agree that the jury was obligated to reduce Mrs. Inks' back pay award by her vacation pay or her unemployment compensation. Thus, the defendants' proposed back pay award should be increased approximately by $1,677.08 to $4,743.74. The court thus construes the defendants' contention to be that since the evidence only supported a back pay award of approximately $4,743.74, the jury's award of $12,797.00 lacked a rational connection to the evidence on damages.

The court must review the damages evidence in the light most favorable to the jury's verdict, and the verdict must stand unless there is no rational connection between the evidence and the jury's award. *McNabola v. Chicago Transit Authority*, 10 F.3d at 516. Under that standard, no justification exists for a new trial or remittitur.

Mrs. Inks contends that her back pay claim for 1992 consisted of at least $4,200.00 in bonus pay. Mrs. Inks had regularly received bonuses while an HDI employee; her 1990 bonus amounted to $2,100.00. HDI granted two sets of bonuses in 1992, one for calendar year 1991 and one for calendar year 1992; both sets of bonuses were awarded

---

2. The defendants cite *Syvock v. Milwaukee Boiler Manufacturing Co.*, 665 F.2d 149 (7th Cir.1981), in support of the contention that the back pay award should be set off by unemployment compensation. Although the Seventh Circuit did state in that case that the district court, in its discretion, could offset the back pay award if deemed appropriate, the court did not in any way suggest that such an offset is mandatory.

after Mrs. Inks' discharge, and Mrs. Inks did not receive either bonus. At least one former colleague of Mrs. Inks who received those bonuses received the same amount she received in 1990. The jury could have found that Mrs. Inks, too, would have received two bonuses in 1992 in the same amount as her 1990 bonus for a total of $4,200.00.

Mrs. Inks also contends that she was entitled to lost earnings for 1993 and 1994 because although she received no salary increases at Nephrology, she had received annual salary increases at HDI until she was discharged. She projects her lost earnings for those years based on the actual salary received during that time by a former colleague who had been retained by Bergen Brunswig. She also projects that she would have received a $200.00 bonus in both 1993 and 1994, based upon similar bonuses received by her former colleagues. Additionally, Mrs. Inks projects lost earnings as a result of her losing her fully vested profit-sharing rights at HDI upon her discharge, amounting to $3,072.64 from 1992 to 1994. Based on these projections, Mrs. Inks calculates that her lost earnings for 1992 and 1993 (based on the difference between what she would have earned at HDI and what she actually earned at Nephrology) amounted to $3,037.80 and $4,037.80, respectively. Combining these amounts with the $4,200.00 from 1992 to equal $11,546.90, and adding to that amount the $3,072.64 in lost profit-sharing, Mrs. Inks thus contends that the evidence supported a back pay award of $14,619.54, and thus that the jury's award of $12,797.00 is rationally related to the evidence presented at trial.[3]

The defendants respond that Mrs. Inks' projections are speculative and conjectural, and so could not rationally support the jury's award of back pay. The defendants refer to testimony of Frank Darnell, who stated that bonuses were always discretionary and based upon the company's profitability, and that the total amount for bonuses paid in 1992 for the calendar year 1991 was lower than it had been in 1990. Several of HDI's employees

did not receive a bonus for 1991. Although this evidence could have warranted the jury in finding that Mrs. Inks would have received smaller bonuses than she had projected, or none at all, the court cannot agree that the evidence precludes a finding that she would have received bonuses commensurate with what she had received in the past.

█ In *Partington v. Broyhill Furniture Industries, Inc.*, 999 F.2d 269, 273 (7th Cir. 1993), the defendant contended that evidence of back pay was too speculative because it included allowances for profit-sharing and bonuses that might not have been paid. The plaintiff had "made no effort to prove what he would actually have received in profit-sharing and bonuses during the years at issue. All he did was assume that he would have continued to receive these things at the same level as in his last years with the company." *Id.* The Seventh Circuit refused to reverse the grant of back pay, stating that

mechanical as Partington's method of estimation was, it is sufficient to satisfy his burden of production, especially when the small amount of money involved (some $18,000) is considered. In general, the larger the stakes in a case, the more money parties will—and should—spend litigating it, because the cost of error is greater the more that is at stake. The amount of proof required to establish damages will tend, therefore, to be proportional to the amount of damages claimed.... [I]t is inevitable and proper that on average the threshold for proving damages will be lower in the small case than in the large. Otherwise the damages recovered in the small case would often be eaten up by the costs of proof, making the net recovery negligible.... To make a plaintiff prove the amount of back pay to which he is entitled with the same meticulous care to exclude alternative hypotheses as if he were seeking a judgment of $100 million would be ludicrous.

---

3. Indeed, as Mrs. Inks contends in her brief, her calculation of lost earnings for 1992 are based solely on lost bonuses and do include the earnings lost as a result of her unemployment. Add

ing that figure (previously approximated by the court to amount to $4,743.74) to Mrs. Inks' calculations, the evidence could support an award of back pay totalling $19,363.28.

*Id.* Mrs. Inks sought (and received) a relatively small amount of back pay damages. The court will not order a remittitur or a new trial merely because the defendants contend that she might not have received a bonus in any given year.

The defendants also contend that Mrs. Inks' proof of lost earnings is based on conjecture because her calculations as represented in an exhibit attached to her opposition brief differ from an exhibit prepared for (but never introduced at) trial. The court finds no merit in this argument. The calculations as represented in the exhibit attached to Mrs. Inks' opposition brief closely follow the arguments made by Mrs. Inks' counsel in her closing argument. That Mrs. Inks' counsel did not rely on an exhibit during her closing argument that was never introduced into evidence does not make her claim for back pay conjectural.

Finally, the defendants contend that Mrs. Inks' projections for lost profit-sharing is unavailing because Bergen Brunswig has no profit-sharing program, but rather offers its employees 401(k) benefits on a voluntary basis. The defendants contend that since there was no evidence at trial as to what level of contributions Mrs. Inks would have made into the 401(k) plan, the jury could not reasonably have based a back pay award on lost profit-sharing amounts for 1993 or 1994. The court agrees with the defendants that Mrs. Inks' calculations with respect to lost profit-sharing amounts for 1993 and 1994 have no rational connection to the evidence. Nevertheless, even without those amounts, the evidence, when viewed in the light most favorable to the jury's verdict, clearly could have supported a finding that Mrs. Inks had suffered almost $13,000.00 in back pay damages. "[T]he verdict must stand unless there is no rational connection between the evidence and the jury's award." *McNabola v. Chicago Transit Authority,* 10 F.3d at 516. Since there is a rational connection between the evidence and the jury's award, the defendants' motion for remittitur, or in the alternative for a new trial, must be denied.

### III. *Mrs. Inks' Fee Petition*

Mrs. Inks filed an initial petition for payment of attorney's fees followed by two supplemental petitions. She contends that she is entitled to an award of fees and costs as the prevailing party on her age discrimination claim. Her attorney, Ms. Aladean DeRose, states that her hourly rate for this litigation was $150.00, and that the hourly rate for paralegal and law clerk work was $25.00. Attorney John Hamilton states in an affidavit that he charges $175.00 per hour for employment discrimination cases, and that Ms. DeRose's work in such cases "is easily worth $150.00 per hour, at least." The defendants do not object to Ms. DeRose's requested hourly rates for herself or for her legal staff, and the court finds them to be reasonable.

Mrs. Inks' initial fee petition contends that the litigation generated $31,927.50 in attorney's fees, $305.00 in legal staff fees, and $1,489.53 in costs, for a total of $33,722.03. In her first supplemental fee petition, Mrs. Inks contends that she incurred an additional $510.00 in attorney's fees; in her second supplemental fee petition, Mrs. Inks contends that she incurred an additional $847.50. Thus, Mrs. Inks has now requested the court for a total award of $33,285.00 in attorney's fees. Combined with her requests for legal staff fees and costs, Mrs. Inks seeks a total award of $35,079.53.

### A.

Mrs. Inks brings her fee petitions pursuant to 29 U.S.C. §§ 216(b) and 626(b); § 216(b) states that "[t]he court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." The defendants contend that since the jury rejected Mrs. Inks' Title VII sex discrimination claim, her requested fees should be reduced for the amount of time researching and pursuing her claim for punitive damages with respect to her Title VII claim. The defendants also contend that the fee award should be reduced because the court rejected her claim for front pay damages. The court must determine the requested fees' reasonableness in light of the plaintiff's success on the merits.

Where the plaintiff has failed to prevail on a claim that is distinct in all respects from his successful claims, the hours spent on the unsuccessful claim should be excluded in considering the amount of a reasonable fee. Where a lawsuit consists of related claims, a plaintiff who has won substantial relief should not have his attorneys fees reduced simply because the district court did not adopt each contention raised. But where the plaintiff achieved only limited success, the district court should award only that amount of fees that is reasonable in relation to the results obtained.

*Hensley v. Eckerhart*, 461 U.S. 424, 440, 103 S.Ct. 1933, 1943, 76 L.Ed.2d 40 (1982); *see also Texas State Teachers Ass'n v. Garland Independent School Dist.*, 489 U.S. 782, 791–93, 109 S.Ct. 1486, 1493–94, 103 L.Ed.2d 866 (1989); *Nanetti v. University of Illinois at Chicago*, 944 F.2d 1416, 1419 (7th Cir.1991) ("when time is spent jointly preparing two distinct claims, the fact that one claim produces no recovery will not deprive the plaintiff of every hour spent in joint preparation"); *Zabkowicz v. West Bend Co., Division of Dart Indus.*, 789 F.2d 540 (7th Cir.1986); *Sassaman v. Heart City Toyota*, 879 F.Supp. at 915 (citing these cases). "The court may consider the damages sought in relation to the damages award received when determining the extent of the prevailing plaintiff's success." *Sassaman v. Heart City Toyota*, 879 F.Supp. at 915 (*citing Ralstin v. NIPSCO*, 54 Fair Empl.Prac.Cas. 226, 229 (BNA), 1990 WL 258770 (N.D.Ind. Sept. 20, 1990) and *Stewart v. County of Sonoma*, 634 F.Supp. 773, 777 (N.D.Cal.1986)).

■■■ The defendants first contend that Mrs. Inks' fee award should be reduced for the time she spent researching and pursuing her claim for punitive damages with respect to her Title VII claim. The defendants concede that Mrs. Inks' Title VII claim was factually related to her ADEA claim, so reduction of Mrs. Inks' attorney's fees on a claim-by-claim basis would be difficult. Nevertheless, quoting *Hensley v. Eckerhart*, 461 U.S. at 435, 103 S.Ct. at 1933, the defendants contend that " 'the District Court should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation' to determine the reasonableness of the fee."

The defendants cite to *Spanish Action Committee of Chicago v. City of Chicago*, 811 F.2d 1129 (7th Cir.1987) in support of their contention that the fee award should be reduced in light of the unsuccessful claim for punitive damages. In *Spanish Action Committee* (which was not brought under Title VII or the ADEA), the court found that the plaintiff's claim for punitive damages was "what the litigation was about." *Id.* at 1134. Furthermore, the court found that "the plaintiff chose to devote substantial time and resources both at trial and on appeal to establishing its right to recover a significant amount of punitive damages." *Id.* at 1135. Here, however, the defendants do not attempt to quantify the amount of time Mrs. Inks spent litigating her punitive damages claim, and Mrs. Inks contends that her counsel expended no more than 85 minutes solely on the punitive damages claim (with only 15 of those minutes being expended at trial). Absent any indication to the contrary, the court agrees with Mrs. Inks that her counsel expended very little time on the punitive damages claim, and therefore concludes that it need not reduce Mrs. Inks' fee award due to the jury's rejection of her Title VII claim.

■■■ The defendants also briefly contend that Mrs. Inks' fee award should be reduced because "the court denied outright plaintiff's petition for front pay." Again, the defendants do not attempt to quantify how much time Mrs. Inks spent litigating her claim for front pay. The time spent by Mrs. Inks' counsel on the front pay claim was inextricably intertwined with Mrs. Inks' efforts with respect to her ADEA claim in general. A plaintiff may be entitled to an award for time spent on claims arising from a common factual core or based on related legal theories. *Zabkowicz v. West Bend Co. Division of Dart Industries*, 789 F.2d at 551. "The court may determine whether the claims are sufficiently related for purposes of an attorneys fee award by determining whether the claims seek relief from essentially the same course of conduct. Claims that involve a common core of facts, though based on distinct legal theories, are sufficiently re-

lated." *Sassaman v. Heart City Toyota*, 879 F.Supp. at 916 (*citing Zabkowicz v. West Bend Co. Division of Dart Industries*, 789 F.2d at 551).

■ "Where a lawsuit consists of related claims, a plaintiff who has won substantial relief should not have his attorneys fees reduced simply because the district court did not adopt each contention raised. But where the plaintiff achieved only limited success, the district court should award only that amount of fees that is reasonable in relation to the results obtained." *Hensley v. Eckerhart*, 461 U.S. at 440, 103 S.Ct. at 1943. The jury returned a verdict in Mrs. Inks' favor on her age discrimination claim, awarding her $15,000.00 (including prejudgment interest) in back pay and $10,000.00 in front pay; the jury's finding that the defendants' discriminatory acts were wilful allowed the court to double the award of back pay as liquidated damages. Although the court eventually reduced Mrs. Inks' back pay award by backing out prejudgment interest, and ultimately determined that no award of front pay was warranted, Mrs. Inks received a total judgment in her favor of $25,594.00. The defendants have made no attempt to quantify how the relief received by Mrs. Inks at trial is so far less than what she sought that the court should conclude that Mrs. Inks received something less than "substantial relief" on the merits of her claim. Mrs. Inks' success at trial was substantial, and since the front pay claim was factually related to all of Mrs. Inks' other claims, her attorney's fees should not be reduced because she did not succeed on all of her claims. *See, e.g., Sassaman v. Heart City Toyota*, 879 F.Supp. at 916 (citing cases).

### B.

■ The task remains to determine whether the fees requested by Mrs. Inks are reasonable.

The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate. This calculation provides an objective basis on which to make an initial estimate of the value of a lawyer's services.

The party seeking an award of fees should submit evidence supporting the hours worked and rates claimed. Where the documentation of hours is inadequate, the district court may reduce the award accordingly.

*Hensley v. Eckerhart*, 461 U.S. at 433, 103 S.Ct. at 1939.

The district court "should exclude from this initial fee calculation" hours that were not "reasonably expended." Attorneys fees incurred in litigating fee issues and post-trial motions are recoverable. Costs incurred in trial preparation are compensable. The prevailing party may recover interest on attorneys fees and costs awarded from the date the award was entered.

*Sassaman v. Heart City Toyota*, 879 F.Supp. at 916–917 (citations omitted). "[H]ours that are excessive, redundant, or otherwise unnecessary" should be excluded. *Hensley v. Eckerhart*, 461 U.S. at 434, 103 S.Ct. at 1940.

With respect to Mrs. Inks' fee petition, the defendants contend that "there are numerous time entries which lack any narrative detail whatsoever for context or understanding of the services rendered or reflect excessive time spent on research." The defendants have specified sixteen separate entries that they contend are "unreasonable, lacking context, explanation, or any indication as to the necessity for case preparation." For each of the specified entries, Ms. Inks has responded with details explaining and justifying those entries; the defendants have not responded to those clarifications.

■ The defendants' list of objections can be combined into eight groups of activities. First, the defendants object to the 10/23/94 entry for a teleconference with Rosemary Rendek (1.5 hours). Mrs. Inks explains that Ms. Rendek was a key witness and that this phone conference was Ms. DeRose's first contact with her. The court agrees that this is time reasonably expended. Second, the defendants object to entries on 11/16/94 (2.0 hours), 11/17/94 (0.5 hours) and 11/28/94 (0.3 hours) spent preparing and revising voir dire questions. The court cannot conclude that 2.5 hours spent on preparation of voir dire questions in a sex and age dis-

crimination case is an unreasonable expenditure of time.

Third, the defendants object to entries on 11/21/94 (3.0 hours), 11/22/94 (3.0 hours) and 11/28/94 (2.0 hours) with respect to research and preparation of proposed jury instructions. Again, the court cannot conclude that eight hours spent on the complex task of researching and preparing jury instructions is unreasonable. Fourth, the defendants object to the entry for 12/3/94 (5.0 hours) with respect to preparing objections to the defendants' proposed jury instructions. Mrs. Inks filed objections with respect to all or part of 21 of the defendants' proposed jury instructions. The court cannot find that five hours spent preparing objections to 21 proposed jury instructions is unreasonable.

Fifth, the defendants object to several entries that reflect time expended on legal research, including 11/29/94 (3.5 hours), 11/30/94 (1.0 hours), 12/13/94 (1.5 hours), 12/14/94 (3.0 hours), 12/15/94 (2.0 hours), and 1/6/95 (4.0 hours). All of these entries reflect time expended by Ms. DeRose. The court cannot conclude that these entries, which reflect research on various legal issues, constitute unreasonable expenditures of time. The defendants object that "[t]o the extent that a law clerk was available to perform additional legal research, counsel's fees for this time are unreasonable and should be reduced," but Mrs. Inks explains that Ms. DeRose's law clerk was unavailable to conduct research from December 8, 1994 to January 5, 1995 due to law school examinations. In any event, the court does not conclude that Ms. DeRose spent an unreasonable amount of time on legal research merely because a law clerk was available to assist her. This court does not propose to hold it unreasonable for a trial lawyer to research the applicable law. *See, e.g., Price v. Marshall Erdman & Associates, Inc.,* 966 F.2d 320, 327 (7th Cir.1992) (reversing the trial court's decision to reduce fee award because a senior partner took depositions "which could just as well have been done by one of the associates in the firm at a lower hourly rate" because "[t]his is cutting things too fine.").

Sixth, the defendants object to the entry for 12/30/94 (2.0 hours), which reflects preparation for and participation in the hearing held December 30 on the issues of front pay, successor liability and prejudgment interest. The defendants do not articulate any specific objections to this entry, and the court agrees with Mrs. Inks that the expended time reflected in this entry should not be disallowed merely because the activities included work on the front pay issue. As previously discussed, although the court denied to grant an award of front pay, fees incurred on that claim are substantially related to Mrs. Inks' meritorious age discrimination claim. Thus, the court shall not wholly disallow this entry, and the court cannot conclude that two hours is an unreasonable amount of time to expend on the activities described therein.

Seventh, the defendants object to an entry for 12/6/94 (0.4 hours) that reflects a telephone conference with the clerk of Ingham County. Although the court agrees that this entry is insufficiently detailed, Mrs. Inks explains that the entry reflects discovery activities intended to explore evidence to be used for impeachment purposes at trial. The court agrees that a plaintiff should not be precluded from receiving attorney's fees for relevant discovery activities simply because the plaintiff's attorney ultimately elected not to utilize the information discovered at trial. *See, e.g., Sassaman v. Heart City Toyota,* 879 F.Supp. at 917 (fees should not be reduced for time spent with potential witnesses simply because those witnesses were not called to testify).

Finally, the defendants object to the entry for 9/28/94 (1.5 hours), which states: "Revise interrogatories; letter to Paul Peralta & hand deliver discovery materials to Attorney Peralta." The defendants object that "$150.00 per hour for delivery of materials is excessive and should likewise be excluded from plaintiff's petition." The court has previously stated that "when an attorney performs a task that could be handled by clerical staff, the opponent should not be charged the attorney's hourly rate," and "[t]he filing of papers is a task which could be handled by clerical staff." *Sassaman v. Heart City Toy-*

*ota,* 879 F.Supp. at 918. Likewise, the court concludes that delivery of discovery materials to opposing counsel, without more, is a task that could be handled by clerical staff. The result would be different if the delivery were shown to have been combined with a conference with opposing counsel or some other purpose achievable only by the attorney herself, but the record before the court attempts no such showing. Therefore, the court concludes that the defendants shall not be charged for Ms. DeRose's time spent delivering discovery materials to Mr. Peralta on September 28, 1994.

This conclusion creates a difficulty to the extent that Ms. DeRose's entry for that date includes other activities that could be billed at the $150.00 hourly rate. In a similar situation, the court refused to charge the defendant for all activities in a single entry because one of the activities was clerical in nature. *See Sassaman v. Heart City Toyota,* 879 F.Supp. at 918 ("The court is aware that the time charged on September 1 included time spent on legal research, ... but the court cannot determine what percentage of the time charged in one entry was spent on any particular activity."). Likewise, the court will not charge the defendants for the 1.5 hours expended on September 28, 1994.

Accordingly, the court finds that Mrs. Inks should be awarded the following in attorneys fees and costs:

| | |
|---|---|
| Attorney Aladean DeRose (220.4 hours at $150.00 per hour) | $33,060.00 |
| Attorney DeRose's Paralegals and Law Clerk (12.2 hours at $25.00 per hour) | $ 305.00 |
| TOTAL FEES | $33,365.00 |
| TOTAL ITEMIZED COSTS | $ 1,489.53 |
| TOTAL AWARD | $34,854.53 |

### IV. *Conclusion*

Therefore, for the reasons stated above, the court:

(1) DENIES Mrs. Inks' motion to reconsider denial of front pay (filed January 9, 1995 (# 50));

(2) DENIES the defendants' motion for remittitur of damages or in the alternative for new trial (filed January 13, 1995 (# 51)); and

(3) GRANTS Mrs. Inks' motions for an award of fees and costs (filed January 13, 1995 (# 53), filed January 19, 1995 (# 59),

and filed February 13, 1995 (# 65)), and AWARDS Mrs. Inks $33,365.00 in fees and $1,489.53 in costs for a total award of $34,-854.53, to be taxed against the defendants.

The clerk is directed to enter judgment accordingly.

SO ORDERED.